# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| HARREY ANTHONY BROWN and ) <br> KESHA LYNETTE BROWN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> BROOKE ARMY MEDICAL CENTER, ) <br> DR. GEORGE J. KALLINGAL, DR. ) <br> ALEXANDER ERNEST, and DR. ) <br> GRACE E. PARK, ) <br> ) <br> Defendants. ) <br>  ) | No. 2:21-cv-03801-DCN-MGB <br><br> **ORDER** |

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 45, that the court grant in part and deny in part defendants United States of America (the "United States"), Brooke Army Medical Center ("BAMC"), Dr. George J. Kallingal ("Dr. Kallingal"), Dr. Alexander Ernest ("Dr. Ernest"),[1] and Grace E. Park's ("Dr. Park") (together, "defendants") motion for substitution of parties, ECF No. 26. For the reasons set forth below, the court adopts the R&R and dismisses BAMC and Dr. Ernest from this case.

## I. BACKGROUND

The R&R ably recites the facts of the case, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts

---

[1] Dr. Ernest's name is misspelled in the complaint as "Earnest." Defendants note the correct spelling and have corrected it in their filings. See ECF Nos. 26-1, 51.

1

as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

This case arises out of an allegedly failed medical procedure that plaintiff Harrey Anthony Brown ("Mr. Brown") received in May 2019. On March 27, 2018, Mr. Brown and his wife, Kesha Lynette Brown ("Mrs. Brown," and together, "plaintiffs") attended a comprehensive prostate cancer clinic at the BAMC Urology Clinic in Fort Sam Houston, Texas to discuss various treatment options for Mr. Brown's prostate cancer diagnosis. During one session, Dr. Kallingal, a urology oncology surgeon, recommended that Mr. Brown undergo a robotic-assisted laparoscopic radical prostatectomy. Dr. Kallingal allegedly claimed to possess "extensive experience and skill with performing the complex surgical procedure." ECF No. 46, Amend. Compl. at 6 ¶ 13. Mr. Brown allegedly consented to the surgery based on that representation and with the understanding that Dr. Kallingal would serve as the primary surgeon, "with no resident involvement." Id.

At some point between the consultation and the procedure, Dr. Park—a resident at BAMC—was reassigned as the primary surgeon for Mr. Brown's procedure. Plaintiffs allege that Dr. Kallingal never obtained Mr. Brown's authorization for Dr. Park to perform the procedure, and he instead falsified an informed consent form by forging Mr. Brown's signature. Dr. Park also allegedly altered Mr. Brown's surgical dictation notes and created filed a falsified surgical counseling session. According to plaintiffs, Dr. Park performed the procedure on or around May 9, 2019 without Mr. Brown's consent. Dr. Kallingal and Dr. Ernest had a duty to supervise Dr. Park but allegedly failed to do so. Due to Dr. Park's alleged lack of skill and experience, the procedure resulted in "severe

post-operative complications," including "a life-threatening illness and physical injuries to [Mr. Brown's] body." Id. at 8 ¶ 15. Mr. Brown has allegedly been required to undergo additional medical procedures to treat the resulting injuries.

On November 19, 2021, plaintiffs, proceeding pro se, filed a complaint against defendants in this court. ECF No. 1. With leave of the court, plaintiffs filed an amended complaint on September 12, 2022. ECF No. 46, Amend. Compl. The amended complaint, now the operative complaint, alleges three causes of action for negligence based on medical battery and medical malpractice and one cause of action for negligence based on respondeat superior liability against BAMC. Id. at 10–11. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Mary Gordon Baker.

On July 5, 2022, defendants filed a motion for substitution of parties. ECF No. 26. On August 1, 2022, plaintiffs filed a brief styled as a "motion for non-substitution of parties," which the magistrate judge construed as a response to the motion for substitution. ECF No. 32. On August 22, 2022, plaintiffs filed another response to the motion to substitute. ECF No. 36. On September 12, 2022, Magistrate Judge Baker issued the R&R, recommending that the court grant in part and deny in part the motion to substitute parties. ECF No. 45, R&R. On September 26, 2022, defendants filed objections to the R&R. ECF No. 51. On September 27, 2022, plaintiffs responded to defendants' objections. Defendants did not file a reply, and the time to do so has now expired. As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings."  Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted).  When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted).  Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings.  Id.

### III.  DISCUSSION

In their motion for substitution of parties, defendants requested that the court substitute the United States as the sole defendant in the place of Dr. Kallingal, Dr. Ernest, Dr. Park, and BAMC.  Defendants argued that pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(d)(2), et seq. and the Gonzalez Act, 10 U.S.C. § 1089(a), et seq., the United States is the only proper defendant for the types of claims that plaintiffs bring.

The magistrate judge granted in part and denied in part the motion.  Specifically, the magistrate judge determined that plaintiffs had met the threshold for showing that Dr. Kallingal and Dr. Park deviated from the scope of their employment such that they were properly-named defendants.  But the magistrate judge found an absence of comparable facts regarding Dr. Ernest and BAMC, and the magistrate judge recommended that the motion for substitution of parties be granted with respect to those two defendants.  Plaintiffs do not object to the R&R, so as a preliminary matter, the court adopts the R&R and dismisses Dr. Ernest and BAMC from this action.  Dr. Kallingal and Dr. Park object to the R&R, arguing that they should be dismissed from the action along with Dr. Ernest and BAMC.  The court first describes the applicable provisions of the FTCA and the Gonzalez Act before turning to defendants' objections to the R&R.

Defendants argued—and the magistrate judge agreed—that this action falls within the purview of both the Gonzalez Act and the FTCA.  The Gonzalez Act immunizes medical workers "of the armed forces" from personal liability for claims arising from the performance of medical or related health care functions.  10 U.S.C. § 1089(a).  There is no dispute that defendants are employees of the armed forces for purposes of the statute.

The Fourth Circuit recently issued an opinion summarizing the procedure in which such workers may be immunized from suit.

> The Gonzalez Act immunizes federal employees in the medical field . . . by allowing the United States to substitute itself as a defendant upon certification by the Attorney General that the medical employee was acting within the scope of his employment at the time of the incident out of which the suit arose. 10 U.S.C. § 1089(c).
>
> After certification, the ball is in the plaintiff's court. If a plaintiff does not challenge the Attorney General's certification, the certification is conclusive. Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). If a plaintiff challenges the Attorney General's certification, he must prove that the defendants were not acting within the scope of their employment. [Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997)]. If the plaintiff presents persuasive evidence refuting certification, the government must provide evidence and analysis supporting its conclusion that the conduct at issue was carried out within the scope of employment. Id. If the plaintiff's evidence carries the burden of proof, the district court may allow any discovery it deems appropriate. Gutierrez de Martinez, 111 F.3d at 1155.

Doe v. Meron, 929 F.3d 153, 160–61 (4th Cir. 2019) (footnote omitted).

Similarly, the FTCA[2] provides a limited waiver of the United States' sovereign immunity, but the waiver restricts liability to acts or omissions of agents or employees of the United States who are acting within the scope of their employment. Roberts v. United States, 2015 WL 4546038, at *3 (D.S.C. July 28, 2015); 28 U.S.C. § 1346(b)(1). When read in tandem, the Gonzalez Act provides that the remedy and waiver of sovereign immunity contained in the FTCA is the exclusive remedy for damages due to personal injury caused by a negligent act of any military healthcare provider whose

---

[2] Under the FTCA, district courts have jurisdiction in a civil action against the United States if the United States is sued under circumstances where "a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, Texas recognizes medical battery as a tort stemming from a lack of informed consent. Miller ex rel. Miller v. HCA, Inc., 118 S.W.3d 758, 767 (Tex. 2003).

6

challenged actions were within the scope of his or her employment.  See Levin v. United States, 568 U.S. 503, 507 (2014) (explaining that the Gonzalez Act "makes claims against the United States under the FTCA the 'exclusive' remedy for injuries resulting from malpractice committed by medical personnel of the armed forces").  Thus, even if the United States were to be substituted for the individual defendants pursuant to the Gonzalez Act, jurisdiction over the government is only proper if the suit is commenced based on a wrongful act or omission of an employee who was acting within the scope of his employment.

In accordance with the procedure outlined in Meron, then-Acting United States Attorney Corey F. Ellis submitted a "Notice of Certification of Scope of Employment Under 28 U.S.C. § 2679(d) and the Gonzales [sic] Act" (hereinafter, the "Certification") on July 5, 2022.  ECF No. 26-1.  The Certification stated that Drs. Kallingal, Ernest, and Park were, at all relevant times, "acting within the scope of their employment" and "providing medical services within the scope of their employment."  Id. at 1–2.  Plaintiffs subsequently challenged the Certification in their response to defendants' motion for substitution of parties.  Of note, plaintiffs argued that by making "false entries" in Mr. Brown's medical records, Dr. Kallingal and Dr. Park acted beyond the scope of their employment.  ECF No. 36 at 5.

In the R&R, the magistrate judge correctly applied Texas law to analyze whether defendants were acting within the scope of their employment.  R&R at 5 (citing Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000) (explaining that district courts "must apply the law of the state in which the alleged tort occurred to ascertain whether the federal employee was acting within the scope of his employment")).  Based

7

on the "limited record at this stage in the proceedings," the magistrate judge ultimately determined that falsifying medical records could constitute a deviation from Dr. Kallingal and Dr. Park's job duties. Id. at 6. Accordingly, the magistrate judge recommended that the court deny the motion for substitution of parties with respect to Dr. Kallingal and Dr. Park.

Now, defendants present two arguments in their objections. First, they argue that Dr. Kallingal and Dr. Park's actions were within the scope of their employment under Texas law. Second, defendants argue that as a matter of procedure, plaintiffs did not meet their burden of proof for challenging the United States Attorney's Certification. As the court explains below, these arguments are most appropriately considered in the reverse order. The court addresses them accordingly, ultimately finding that plaintiffs have sufficiently rebutted the Certification by showing that Dr. Kallingal and Dr. Park may have deviated from the scope of their employment.

### A. Rebuttal of Certification

The issue of whether the individual defendants were acting within the scope of their employment under Texas law cannot be divorced from the issue of whether plaintiffs have satisfied their burden of rebutting the certification, which is a matter of federal law. See Lee v. United States, 171 F. Supp. 2d 566, 574 (M.D.N.C. 2001) (explaining that the court should only apply the respondeat superior law of the state in which the alleged tortious conduct occurred after it has resolved disputed issues of fact, as presented in the government's certification and the plaintiff's refutation); see also Meron, 929 F.3d at 165 (analyzing the exhibits offered by the plaintiff to challenge the certification but only to the extent that they were relevant to the scope-of-employment

analysis under state law). Therefore, the court chooses to analyze the scope-of-employment issue by first determining whether plaintiffs have met their burden in refuting the Certification and what evidence, if any, may be applied.

The scope-of-employment certification is prima facie evidence that the employee acted within the scope of his or her employment. Gutierrez de Martinez, 111 F.3d at 1155. The certification need not "provide details, explanations, or evidence" in order for the burden to shift to the plaintiff to prove by a preponderance of the evidence that the employee was acting outside of the scope of his or her employment. Stephens v. United States, 2015 WL 4885502, at *6 (E.D. Va. Aug. 14, 2014) (citing Maron, 126 F.3d at 323). Once the burden is on the plaintiff, he or she must provide "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Gutierrez de Martinez, 111 F.3d at 1155.

Upon review, the court concludes that plaintiffs have adequately refuted, but not disproved, the Certification. Certainly, Fourth Circuit precedent establishes that once a scope-of-employment certification is made, "the ball is in the plaintiff's court." Meron, 929 F.3d at 160. Even so, the court agrees with the magistrate judge that the litigation is in its relatively early stages, and plaintiffs have satisfied their burden of proof.

First, plaintiffs have presented evidence that Dr. Kallingal and Dr. Park were acting outside the scope of their employment. The determination of what constitutes sufficient evidence is case-specific, but the Fourth Circuit has noted that examples of such evidence include written affidavits or job descriptions of the defendant's position. See, e.g., Maron, 126 F.3d at 327 (noting that the plaintiff "offered no job descriptions"

9

of the defendants' position); Borneman, 213 F.3d at 828 (reversing the district court's decision to reject the government's scope-of-employment certification as premature but noting that the court could weigh the plaintiff's affidavit in determining whether he had satisfied his burden of proof). Here, the court agrees with defendants that the evidence plaintiffs initially presented to the magistrate judge was deficient. Plaintiffs did not provide, for example, any job descriptions or BAMC medical manuals. Plaintiffs argue that they provided evidence in the form of an expert report from Dr. Dudley S. Danoff ("Dr. Danoff"), who opined that Dr. Kallingal and Dr. Park failed "to follow the correct standard of care and act with diligence to diagno[se] and treat Mr. Brown[]." ECF No. 52 at 10. The problem for plaintiffs is that Dr. Danoff's evidence is only evidence that defendants breached their standard of care, which is evidence that speaks to the merits in this case. That evidence does not speak to whether those defendants acted outside the scope of their employment.

Were the court simply relying on the evidence presented by plaintiffs to the magistrate judge, the court may have been inclined to find that plaintiffs failed to meet their burden of persuasion. But in their response to defendants' objections, plaintiffs provide, for the first time, several new documents that they claim reveal defendants' deceit. See ECF Nos. 52-1–52-11. "[A] district court has discretion but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000); see also United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992) (concluding that a district court is required to consider all arguments relevant to a contested issue, regardless of whether they were raised before the magistrate judge). When the litigant is pro se, a

court is afforded even more leeway to consider such evidence.  See Wojcicki v. Aiken Tech. Coll., 360 F. App'x 484, 487 (4th Cir. 2010) (holding that the district court erred in refusing to consider new evidence raised by a pro se litigant).  Thus, even though the evidence was not presented prior to the issuance of the R&R, in deference to the plaintiffs' pro se status, the court agrees to consider the evidence for plaintiffs' benefit.

The court finds that at this stage, plaintiffs have proven by a preponderance of the evidence that Dr. Kallingal and Dr. Park may have fabricated certain medical records and if so, were acting outside the scope of their employment.  In Exhibit A, Mr. Brown signed a Request for Administration of Anesthesia stating that the procedure should be performed by Dr. Kallingal.  ECF No. 52-1.  In Exhibit J, Mr. Brown provides the result of an alleged polygraph test in which he truthfully stated that he was never informed that a resident would perform his surgery or that the surgery would be transferred to anyone else.[3]  ECF No. 52-10.  Plaintiffs also point out that Exhibit E, a "Nurse Intraoperative Note" dated May 9, 2019 identifies Dr. Park as Mr. Brown's primary surgeon—not Dr. Kallingal.  ECF No. 52 at 13 (citing ECF No. 52-5).  However, Exhibit K, an "Operative Report" also dated May 9, 2019, lists Dr. Kallingal as the primary surgeon and Dr. Park as an assistant.  ECF No. 52-11.  When the documents are read together, the court finds that plaintiffs have presented sufficient evidence demonstrating that defendants arguably improperly substituted Dr. Park as the primary surgeon.

Even if plaintiffs failed to present evidence that contradicts the certification, the court finds that plaintiffs have "forecast specific evidence that contradicts the

---

[3] The court noted above that plaintiffs failed to submit any affidavits as evidence. To the extent Fourth Circuit precedent requires affidavit evidence, the court finds that the purported polygraph statement serves a similar purpose as a written affidavit.

11

certification." Meron, 929 F.3d at 165 (citing Gutierrez de Martinez, 111 F.3d at 1155). Few courts within this circuit have precisely defined what it means to "forecast specific evidence," with the Fourth Circuit in Gutierrez de Martinez instructing that it requires something more than mere conclusory allegations and speculation. 111 F.3d at 1155. In one case before the Eastern District of North Carolina, the court determined that the plaintiff had forecast evidence contradicting the government's certification. Palmer v. U.S. Amateur Boxing, Inc., 2013 WL 12429970, at *2 (E.D.N.C. Mar. 11, 2013). There, the court found that the plaintiff presented some evidence that the defendants were subject to the rules and regulations of an entity that was not the defendants' employer, and in her memorandum, the plaintiff described other ways that the separate entity controlled the defendants. Id.

Here, the court finds plaintiffs have provided some evidence and forecasted the existence of other evidence. Plaintiffs repeatedly point to Exhibit I, which contains a set of patient notes written by Mr. Brown's providers. ECF No. 52-9. Dr. Park entered a note documenting a visit on May 8, 2019, and plaintiffs contend that the note was fraudulent and "was a duplicate of [Dr.] Kallingal's patient note from Mach 27, 2019 (See Exhibit I)." ECF No. 52 at 14. The court has scoured the record, and the only note about a visit on March 27, 2019 appears to be in Exhibit F. ECF No. 52-6. As far as the court can tell, the note for the March 27 visit—which was written by Dr. Kallingal—is not, as plaintiffs claim, an exact duplicate of Dr. Park's note.[4] Compare ECF No. 52-6,

---

[4] Though there are some similarities—take, for instance, the identical wording in the "Active Surveillance" section as well as a suggestion to follow up with Dr. Morales—those similarities alone do not clearly suggest a fraudulent duplication, but rather could suggest an economical use of existing information (a fault that courts are guilty of on occasion as well). As to dissimilarities, the court notes that one note misspelled surgery

12

with ECF No. 52-9. Setting aside the discrepancies, the court agrees that plaintiffs in their briefs have also established that discovery may yield additional information supporting their claim that patient records were fraudulently created.[5] Thus, like the court in Palmer, the court concludes that plaintiffs have adequately forecasted the existence of evidence that may assist them in rebutting the Certification.[6]

### B. Texas Law

In the preceding section, the court resolved disputed issues of fact and determined that plaintiffs have presented sufficient evidence to rebut the Attorney General's certification by showing that Dr. Park and Dr. Kallingal may have falsified medical records. The next step is to decide whether such conduct constitutes a deviation from their job duties.

Under Texas law, an employee's conduct falls within the scope of employment if the actions were: "(1) within the general authority given him, (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." Counts v. Guevara, 328 F.3d 212, 214 (5th Cir. 2003)

---

("surrgeyr") whereas the other did not. There were broader differences as well, particularly with regards to the summary of Mr. Brown's medical condition, present illness, review of symptoms, and the inclusion of results from a Cancer Distress Screening Tool in Exhibit F that were not present in Exhibit I.

[5] Discovery was scheduled to be completed at or near the time of this order. ECF No. 65 (setting discovery deadline for March 3, 2023). The court rules on the instant motion solely based on the information adduced from the briefs before the R&R and the briefs filed in response.

[6] In Palmer and other cases, courts ordered limited discovery to help resolve the scope-of-employment issue. See Palmer, 2013 WL 12429970, at *3 (ordering limited discovery); Malek v. United States, 2021 WL 3849721, at *7 (W.D. Tex. Aug. 27, 2021) (same). As a practical matter, the court finds that such an order would not aid the court in this case as discovery is already ongoing. However, in any dispositive motion they may file, defendants will be able to reassert that Dr. Kallingal and Dr. Park are not proper defendants based on the totality of the discovered evidence.

(applying Texas state tort law) (citations omitted).  In their objections, defendants urge the court to stray from the magistrate judge's recommendation, arguing that under Texas law, the scope-of-employment test is objective and not subjective.  ECF No. 51 at 2 (citing Laverie v. Wetherbe, 517 S.W.3d 748, 753 (Tex. 2017)).  In other words, an employee's conduct can be within the scope of his or her employment even if the employee was performing it negligently or if it was done in part to serve the employee's own purposes.  Id. at 2–3 (citing Anderson v. Bessman, 365 S.W.3d 119, 125–26 (Tex. App. 1st 2011)).

    Defendants' cases, although an accurate reflection of Texas law, do not lead the court to conclude that Dr. Kallingal and Dr. Park were acting within the scope of their employment for purposes of the motion to dismiss.  Had plaintiffs simply alleged that Dr. Park performed the surgery without due care or that Dr. Kallingal failed to properly supervise Dr. Park, the court would agree that such conduct—although wrongful—would fall within their scope of employment.  See Fink v. Anderson, 477 S.W.3d 460, 470 (Tex. App. 1st 2015) (explaining that Texas courts "have broadened the focus to ask whether the general conduct was within the scope of employment instead of whether the specific act was somehow wrongful").  But as the court explained, plaintiffs have rebutted the Certification with claims that Dr. Kallingal and Dr. Park fabricated documents and records.  The court agrees with the magistrate judge that taken in the light most favorable to the pro se plaintiffs, such actions do not fall within the scope of employment, at least based on the evidence currently before the court.

    In their objections, defendants argue that even if the doctors had engaged in the tortious conduct alleged in the complaint, that conduct was still connected to their job

14

duties. Specifically, defendants contend that "[o]btaining consent for surgery and performing surgery are clearly actions that serve . . . the United States Army," and similarly, "placing surgical notes in [Mr.] Brown's medical record" falls within their duties in performing surgery. ECF No. 51 at 4. But defendants fail to acknowledge that as alleged, the individual defendants' conduct so deviated from their duties that it could no longer be considered as serving the Army's purpose. "[C]onduct that is better viewed as a deviation from an assigned task instead of an escalation beyond what was authorized is not within the employee's scope of employment." Fink, 477 S.W.3d at 467 (citing Zarzana v. Ashley, 219 S.W.3d 152, 159–60 (Tex. App. 14th 2007)). In that vein, Texas courts have repeatedly held that an employee does not act within the scope of employment when he or she exceeds the authority given to him or her. See, e.g., Buck v. Blum, 130 S.W.3d 285, 289 (Tex. App. 14th 2004) (affirming the trial court's finding that a doctor was not acting within the scope of his employment when he allegedly made inappropriate sexual contact with the patient during a neurological examination because the act was not "connected with and immediately arising out of [his] employment tasks"); Morrow v. Daniel, 367 S.W.2d 715, 718–19 (Tex. App. 1963) (declining to find that a the secretary of a company was acting within the scope of his authority when he allegedly substituted and sold the company's stock certificates to a third party without the knowledge of the company).

Drawing upon those cases, the court finds that Dr. Kallingal and Dr. Park arguably exceeded the scope of their authority based on the evidence presented at the time of this motion. The practice of medicine does not inherently require duplicity, and thus, plaintiffs have presented evidence and sufficiently forecasted evidence that Dr.

Kallingal and Dr. Park failed to act within the general authority given to them, were not acting in furtherance of BAMC's business, and were not seeking to accomplish an object for which they were employed. As the court noted before and emphasizes again, this order—like the magistrate judge's recommendation—is limited to finding that plaintiffs have sufficiently rebutted the Certification filed by the United States Attorney. Accordingly, the government will be entitled to reaffirm that the Certification was correctly submitted and to respond with additional evidence that Dr. Kallingal and Dr. Park were acting within the scope of their employment. See Lee, 171 F. Supp. 2d at 573–74 (explaining that if the plaintiff refutes the certification, the government may "come forward with evidence and analysis to show that the alleged torts occurred within the scope of employment" and that the government "may allow limited discovery or conduct an evidentiary hearing" to assist in the inquiry). For purposes of this motion, the court overrules defendants' objections.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the magistrate judge's R&R and **GRANTS IN PART** and **DENIES IN PART** defendants' motion for substitution of parties. Defendants Brooke Army Medical Center and Alexander Ernest are **DISMISSED** from this action.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 10, 2023
Charleston, South Carolina**