# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| HARREY ANTHONY BROWN and KESHA LYNETTE BROWN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) No. 2:21-cv-03801-DCN-MGB |
| UNITED STATES OF AMERICA, BROOKE ARMY MEDICAL CENTER, DR. GEORGE J. KALLINGAL, DR. ALEXANDER ERNEST, and DR. GRACE E. PARK, | )<br>) **ORDER**<br>)<br>)<br>) |
| Defendants. | )<br>) |

This matter is before the court on plaintiffs Harrey Anthony Brown ("Mr. Brown") and Keisha Lynette Brown's ("Mrs. Brown," together, "plaintiffs") motion for reconsideration. ECF No. 80. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

This case arises out of an allegedly failed medical procedure that Mr. Brown received in May 2019. On March 27, 2018, Mr. Brown and his wife, Mrs. Brown, attended a comprehensive prostate cancer clinic at the Brooke Army Medical Center ("BAMC") Urology Clinic in Fort Sam Houston, Texas to discuss various treatment options for Mr. Brown's prostate cancer diagnosis. During one session, defendant George J. Kallingal ("Dr. Kallingal"), a urology oncology surgeon, recommended that Mr. Brown undergo a robotic-assisted laparoscopic radical prostatectomy. Dr. Kallingal allegedly claimed to possess "extensive experience and skill with performing the

1

complex surgical procedure." ECF No. 46, Amend. Compl. at 6 ¶ 13. Mr. Brown allegedly consented to the surgery based on Dr. Kallingal's representation and with the understanding that Dr. Kallingal would serve as the primary surgeon "with no resident involvement." Id.

At some point between the consultation and the procedure, defendant Grace E. Park ("Dr. Park")—a resident at BAMC—was reassigned as the primary surgeon for Mr. Brown's procedure. Plaintiffs allege that Dr. Kallingal never obtained Mr. Brown's authorization for Dr. Park to perform the procedure, and Dr. Kallingal instead falsified an informed consent form by forging Mr. Brown's signature. Plaintiffs further allege that Dr. Park altered Mr. Brown's surgical dictation notes and fabricated a surgical counseling session. According to plaintiffs, Dr. Park performed the procedure on or around May 9, 2019, without Mr. Brown's consent. Due to Dr. Park's alleged lack of skill and experience, the procedure resulted in "severe post-operative complications," including "a life-threatening illness and physical injuries to [Mr. Brown's] body." Id. at 8 ¶ 15. Mr. Brown has allegedly been required to undergo additional medical procedures to treat the resulting injuries.

On November 19, 2021, plaintiffs, proceeding pro se, filed a complaint against defendants United States of America (the "United States"), Dr. Kallingal, and Dr. Park (together, "defendants"), as well as against BAMC and Dr. Alexander Ernest ("Dr. Ernest"). ECF No. 1. Plaintiffs filed an amended complaint on September 12, 2022, alleging three separate causes of action for negligence based on medical battery and medical malpractice. ECF No. 46, Amend. Compl. Pursuant to 28 U.S.C.

§§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Mary Gordon Baker.

On September 12, 2022, Magistrate Judge Baker issued a report and recommendation ("R&R") on defendants' motion for substitution of parties, ECF No. 26, recommending that the court grant in part and deny in part defendants' motion and dismiss BAMC and Dr. Ernest as defendants.  ECF No. 45, R&R.  Plaintiffs did not file objections to the R&R.  On February 10, 2023, the court adopted the R&R in full and dismissed BAMC and Dr. Ernest from the case.  ECF No. 72.

On April 17, 2023, plaintiffs filed a motion for reconsideration.  ECF No. 80. Defendants responded to the motion on April 20, 2023, ECF No. 88, and plaintiffs replied on April 24, 2023, ECF No. 89.  As such, the motion to reconsider is now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 54(b) is the proper avenue by which a party may seek reconsideration of an interlocutory order.  Spill the Beans, Inc. v. Sweetreats, Inc., 2009 WL 2929434, at *1 (D.S.C. Sept. 8, 2009).  Rule 54(b) provides that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added).  Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted."  Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) (citations omitted); see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final

3

decree is subject to reopening at the discretion of the district judge"). Compared to motions under Rule 59(e) for reconsideration of final judgments, "Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (citation omitted).

"The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion" but has noted that Rule 54(b) motions "are 'not subject to the strict standards applicable to motions for reconsideration of a final judgment.'" Ashmore v. Williams, 2017 WL 24255 at *2 (D.S.C. Jan. 3, 2017) (quoting Am. Canoe Ass'n, 326 F.3d at 514). Even so, "district courts in the Fourth Circuit . . . look to the standards of motions under Rule 59 for guidance." Id. (citations omitted). As such, Rule 54(b) reconsideration is appropriate "(1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice." Id. (citation omitted); Carlson, 856 F.3d at 324.

### III. DISCUSSION

Plaintiffs move the court to reconsider its decision to dismiss BAMC and Dr. Ernest from the case. At the outset, the court must note that plaintiffs never filed objections to the R&R, which recommended the dismissal of those two defendants. In the absence of a timely objection, the court reviewed the magistrate judge's recommendation as to BAMC and Dr. Ernest for clear error, and finding none, it dismissed the two defendants. ECF No. 72 at 5; Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). The R&R had warned the parties that failure to object to the magistrate judge's recommendations within fourteen days of receiving

service would constitute a waiver of appellate rights on the issues presented.  R&R at 8 (citations omitted).

The court recognizes that plaintiffs are pro se litigants.  But "[t]he mere fact that [a] plaintiff is proceeding pro se does not provide an excuse for non-compliance with the filing deadline."  Lear v. Giant Food Inc., 1996 WL 726919, at *1 (D. Md. Mar. 26, 1996) (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147 (1984)) (other citations omitted).  Similarly, "while pro se litigants are held to a more lenient standard, . . . they are not excused from making proper objections."  Demos v. Immett, 2022 WL 2802975, at *1 (W.D. Wash. July 18, 2022) (first citing Erikson v. Pardus, 551 U.S. 89, 94 (2007); and then citing Carter v. Comm'r of Internal Revenue, 784 F.2d 1006, 1008 (9th Cir. 1986)).  Therefore, reconsideration of the prior order by reviewing it for clear error again is arguably improper.

Even if the court favorably construes plaintiffs' motion as an out-of-time objection and agrees to consider it,[1] the court ultimately finds that the new arguments raised do not warrant reconsideration.  In the R&R, the magistrate judge recommended that the court deny the motion to substitute the United States for Dr. Kallingal and Dr. Park because plaintiffs had alleged specific evidence that those two defendants were acting outside the scope of their employment.  R&R at 6.  The court adopted the R&R, adding that plaintiffs had also presented evidence of the two doctors' deviation from their duties.  ECF No. 72 at 11.  But as the R&R noted, plaintiffs had not presented any evidence that Dr. Ernest acted outside the scope of his employment.  R&R at 6.

---

[1] See, e.g., VanBrocklen v. Gupta, 2011 WL 6099563, at *1 (W.D.N.Y. Dec. 7, 2011) (exercising the court's "inherent power to reconsider" and addressing the plaintiff's late-filed objections).

Now, in their motion to reconsider, plaintiffs argue that Dr. Ernest should remain in the lawsuit because he violated Texas law by providing negligent training and supervision. This argument proves fatal for plaintiffs. Dr. Ernest was not dismissed because the court determined that he was not liable; he was dismissed because the United States assumes potential liability for his acts and omissions under the Gonzalez Act. As the court, quoting the Fourth Circuit, explained in its order:

> The Gonzalez Act immunizes federal employees in the medical field . . . by allowing the United States to substitute itself as a defendant upon certification by the Attorney General that the medical employee was acting within the scope of his employment at the time of the incident out of which the suit arose. 10 U.S.C. § 1089(c).
>
> After certification, the ball is in the plaintiff's court. If a plaintiff does not challenge the Attorney General's certification, the certification is conclusive. Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). If a plaintiff challenges the Attorney General's certification, he must prove that the defendants were not acting within the scope of their employment. [Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997)]. If the plaintiff presents persuasive evidence refuting certification, the government must provide evidence and analysis supporting its conclusion that the conduct at issue was carried out within the scope of employment. Id. If the plaintiff's evidence carries the burden of proof, the district court may allow any discovery it deems appropriate. Gutierrez de Martinez, 111 F.3d at 1155.

Doe v. Meron, 929 F.3d 153, 160–61 (4th Cir. 2019) (footnote omitted).

Here, plaintiffs fail to engage in an analysis under the Gonzalez Act, even on "reconsideration." Instead, they argue that during preparation for summary judgment, they discovered evidence that Dr. Ernest provided negligent training and supervision by failing to "assure [Drs.] Kallingal and Park were trained in compliance with JCAHO's Informed Consent Policy," among other alleged failures. ECF No. 80 at 5. Even if plaintiffs are entirely correct about Dr. Ernest's failures, Dr. Ernest is still not a proper defendant because the Gonzalez Act provides that the United States should be substituted

for him.  Then-Acting United States Attorney Corey F. Ellis certified that Dr. Ernest was acting within the scope of his employment at all relevant times, ECF No. 26-1, and plaintiffs failed to refute the certification as to Dr. Ernest.  Even now, they do not present evidence that Dr. Ernest was acting outside the scope of his employment when he allegedly provided negligent training and supervision.  As the court explained in its prior order, alleged negligent conduct and conduct outside the scope of employment are not reciprocal concepts.  ECF No. 72 at 14 (citing Fink v. Anderson, 477 S.W.3d 460, 470 (Tex. App.-Houston 2015, no pet.)).  Plaintiffs' recourse is to try these claims against the United States.

       Finally, plaintiffs also move for reconsideration of the decision to dismiss BAMC as a defendant.  As the magistrate judge noted, plaintiffs initially failed to present any argument at all about why BAMC should not be dismissed in their response to the motion to substitute.  R&R at 6.  Therefore, far from even failing to object, plaintiffs' motion to reconsider on this ground is unquestionably untimely.  In any event, plaintiffs merely repeat that BAMC is liable for negligent supervision and training, but their argument again fails to go to the heart of the matter.  Defendants previously argued that BAMC is not a proper defendant under the doctrine of sovereign immunity.  ECF No. 26 at 3.  Although the Federal Tort Claims Act ("FTCA") provides for a limited waiver of the United States' sovereign immunity for claims arising out of torts committed by agents or employees of the United States, "[a] party may bring an action against the United States only to the extent that the government waives its sovereign immunity."  Valdez v. United States, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing United States v. Orleans, 425 U.S. 807, 814 (1976)).  Congress has not waived a federal agency or entity's sovereign

7

immunity under the FTCA.  See <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983); 28 U.S.C. §§ 1346(b)(1), 1679(a).  Plaintiffs' claims against BAMC are therefore barred by sovereign immunity.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** the motion to reconsider.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**May 3, 2023**
**Charleston, South Carolina**