IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| HARREY ANTHONY BROWN and KESHA LYNETTE BROWN, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:21-cv-03801-DCN |
| vs. | ) ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

The following matter is before the court on plaintiffs Harrey Anthony Brown ("Mr. Brown") and Kesha Lynette Brown's ("Mrs. Brown") (together, "plaintiffs") motion in limine, ECF No. 115, and motion to strike, ECF No. 116. For the reasons set forth below, the court grants the motion in limine and denies the motion to strike. The court directs the defendant United States of America ("United States" or the "government") to notify the court whether it intends to designate its own expert witness and, if so, to provide a schedule to the court for that designation as well as the depositions of all newly designated expert witnesses.

## I.  BACKGROUND

This case arises out of an allegedly failed medical procedure that Mr. Brown received in May 2019. Mr. Brown was diagnosed with prostate cancer in December 2018, and in March 2019, he and his wife attended a comprehensive prostate cancer clinic at the Brooke Army Medical Center ("BAMC") Urology Clinic in Fort Sam Houston, Texas to discuss various treatment options. Plaintiffs allege that they met with Dr. George J. Kallingal ("Dr. Kallingal"), a urology oncology surgeon at BAMC, who

1

recommended that Mr. Brown undergo a robotic-assisted laparoscopic radical prostatectomy. The government disputes this account and claims that before meeting Dr. Kallingal, plaintiffs met with several other physicians. For example, the government claims that on February 4, 2019, plaintiffs met with "Dr. Morales," who purportedly wrote in his visit notes that he had recommended "active surveillance" for Mr. Brown's "very low risk prostate cancer." ECF No. 75-5, Kallingal Decl. ¶ 11. Mr. Brown allegedly "still prefer[red] surgery," so Dr. Kallingal met Mr. Brown for the first time on March 27, 2019. Id. ¶ 11, 13. At the visit, Mr. Brown elected to undergo the robotic-assisted laparoscopic prostatectomy.

Plaintiffs allege that Dr. Kallingal claimed to possess "extensive experience and skill with performing the complex surgical procedure." ECF No. 46, Amend. Compl. ¶ 13. Mr. Brown claims he consented to the surgery based on the understanding that Dr. Kallingal would serve as the primary surgeon "with no resident involvement." Id. Dr. Kallingal disputes this, claiming that he did not represent that he would perform the surgery alone and that he would not have done so because "[a] robotic assisted laparoscopic prostatectomy cannot be performed by one person." Kallingal Decl. ¶ 19.

According to plaintiffs, BAMC changed the "primary surgeon" from Dr. Kallingal to Dr. Grace E. Park ("Dr. Park"), a resident physician at BAMC. Amend. Compl. ¶ 13. Plaintiffs allege that Dr. Kallingal never obtained Mr. Brown's authorization for Dr. Park to perform the procedure and that Dr. Kallingal instead falsified an informed consent form by forging Mr. Brown's signature. Plaintiffs further allege that Dr. Park altered Mr. Brown's surgical dictation notes and fabricated a surgical counseling session to show that she had visited with him prior to the surgery. The

government similarly disputes these claims. According to the government, Dr. Park was the Chief Resident and did not perform the surgery. As Chief Resident, Dr. Park conducted a preoperative clearance visit with Mr. Brown. ECF No. 75-6, Park Decl. ¶ 10. On the day of the surgery, Dr. Park provided bedside assistance by positioning, prepping, and draping the patient. Id. ¶ 13. Dr. Kallingal was the attending surgeon who purportedly controlled the robot and performed the operation on Mr. Brown on May 9, 2019. Kallingal Decl. ¶ 26.

According to plaintiffs, Dr. Park performed the procedure without Mr. Brown's consent. Plaintiffs allege that due to Dr. Park's lack of skill and experience, the procedure resulted in "severe post-operative complications," including "a life-threatening illness and physical injuries to [Mr. Brown's] body." Amend. Compl. at 8 ¶ 14. Mr. Brown has allegedly been required to undergo additional medical procedures to treat the resulting injuries.

On November 19, 2021, plaintiffs, proceeding pro se, filed a complaint against the United States, Dr. Kallingal, Dr. Park, BAMC, and Attending Dr. Alexander Ernest ("Dr. Ernest") (collectively, "defendants"). ECF No. 1, Compl. Plaintiffs filed an amended complaint on September 12, 2022, alleging three separate causes of action for negligence based on medical battery and medical malpractice. ECF No. 46, Amend. Compl. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Mary Gordon Baker. On February 10, 2023, the court granted in part and denied in part defendants' motion for substitution of parties and substituted the United States as a party for BAMC and Dr. Ernest. ECF No. 72. On September 5, 2023, the court adopted the

magistrate judge's R&R, ECF No. 101, and denied plaintiffs' motion for summary judgment, ECF No. 61, and granted in part and denied in part defendants' motion for summary judgment, ECF No. 75. ECF No. 110. In that order, the court dismissed Drs. Kallingal and Park and substituted the United States in their place. Id. at 13. Consequently, only the plaintiffs and the United States remain as parties in this case.

On October 24, 2023, plaintiffs, proceeding pro se, filed a motion in limine. ECF No. 115. The government responded in opposition on November 7, 2023, ECF No. 117, to which plaintiffs replied on November 15, 2023, ECF No. 121. On October 30, 2023, plaintiffs filed a motion to strike. ECF No. 116. On November 13, 2023, the government responded in opposition, ECF No. 120, to which plaintiffs replied on November 27, 2023, ECF No. 122. The court held a hearing on the pending motions on December 18, 2023. ECF No. 127. As such, the motions are fully briefed and are now ripe for the court's review.

## II. DISCUSSION

The court will first examine plaintiffs' motion in limine before evaluating plaintiffs' motion to strike. The court ultimately grants the motion in limine and denies the motion to strike for the reasons set forth below.

### A. Motion in Limine

The purpose of a motion in limine is to obtain a preliminary ruling on the admissibility of a particular evidentiary matter. Luce v. United States, 469 U.S. 38, 40 n.2 (1984). A court will exclude evidence on a motion in limine only if the evidence is "clearly inadmissible for any purpose." Hall v. Sterling Park Dist., 2012 WL 1050302, at *2 (N.D. Ill. Mar. 28, 2012).

In the absence of a stipulation or court order stating otherwise, Rule 26 requires litigants to provide opposing counsel with a written report prepared and signed by an expert witness who may testify at trial. Fed. R. Civ. P. 26(a)(2)(A)–(B). "A party must make required expert witness disclosures 'at the times and in the sequence that the court orders.'" Bresler v. Wilmington Tr. Co., 855 F.3d 178, 189 (4th Cir. 2017) (quoting Fed. R. Civ. P. 26(a)(2)(D)). The purpose of Rule 26(a) is to allow litigants "to adequately prepare their cases for trial and to avoid unfair surprise." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 396 (4th Cir. 2014). Accordingly, a party who fails to comply with the expert witness disclosure rules is prohibited from "us[ing] that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

District courts are accorded "broad discretion" in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (quoting S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)). In making this determination, district courts are guided by the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

S. States, 318 F.3d at 597. The first four factors listed above relate primarily to the harmlessness exception, while the last factor—addressing the party's explanation for its nondisclosure—relates mainly to the substantial justification exception. Id. The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless. Wilkins, 751 F.3d at 222 (citations omitted).

Plaintiffs filed a motion in limine seeking an order that would allow their retained expert Patricia J. Hale ("Hale"), owner of Forensic Forgery Experts, "to offer in accordance with her untimely report for the limited and specific purpose of establishing a gross negligence cause of action." ECF No. 115 at 1. Plaintiffs also indicate their intention to call Mrs. Brown as an expert witness regarding nursing operating room proper procedures and clinical documentation. Id. at 9.

While plaintiffs' request is untimely, plaintiffs are proceeding pro se.[1] Courts generously construe pro se petitions to allow for a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). As such, the court holds plaintiffs' petition to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). The court finds that permitting the plaintiffs to name Hale and Mrs. Brown as expert witnesses will be substantially justified and harmless.[2]

---

[1] The deadline to identify expert witnesses passed on September 6, 2022. ECF No. 28.

[2] In reference to the Southern States factors, the court notes that the first two factors—unfair surprise to the government and the government's ability to cure that surprise—are mitigated because the court will permit the government to name its own expert witnesses in response. See S. States, 318 F.3d at 597. Additionally, plaintiffs are required to properly qualify both Hale and Mrs. Brown as experts in accordance with Fed. R. Civ. P. 26(2). See id. Moreover, there is little surprise as to Hale because both parties have considered whether Hale should be qualified as an expert witness since the plaintiffs filed their objections to the R&R on June 28, 2023, over six months ago. See ECF No. 104 at 8. The third and fourth factors weigh in favor of the government because the only remaining claim alleges medical malpractice by Dr. Park for failing to timely diagnose Mr. Brown's anastomotic leak from the diagnostic tests performed after the surgery where this substantial delay proximately caused Mr. Brown to undergo additional treatment for two years. See ECF No. 110 (citing ECF No. 61-3 at 4). As such, the relative importance of a handwriting expert and a nursing operating room procedure and clinical documentation expert remains to be seen, but that is a challenge which can be raised later after both Hale and Mrs. Brown have prepared their respective expert reports in accordance with Fed. R. Civ. P. 26(2). Finally, the fifth factor weighs heavily in favor of allowing the inclusion of Hale and Mrs. Brown as expert witnesses because the plaintiffs are proceeding pro se, and while pro se litigants are not excused from

Given the foregoing, the court grants the motion in limine and allows plaintiffs to name Hale and Mrs. Brown as expert witnesses, provided these two witnesses can be qualified as experts in accordance with Fed. R. Civ. P. 26(2). The court directs the government to notify the court whether it intends to designate its own expert witness and, if so, to provide a schedule to the court for that designation as well as a deposition schedule for all expert witnesses.

### B. Motion to Strike

Rule 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks and citations omitted); see also Brown v. Inst. For Fam. Centered Servs., Inc., 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005) ("Motions to strike are . . . granted only for egregious violations."). When presented with a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." Clark v. Milam, 152 F.R.D. 66, 71 (S.D.W. Va. 1993).

---

complying with the applicable procedural rules, their failure to do so is more excusable than an attorney's failure to do the same. See S. States, 318 F.3d at 597; see also Gordon, 574 F.2d at 1151. In sum, the court finds that permitting plaintiffs to name Hale and Mrs. Brown as expert witnesses is substantially justified and harmless.

Furthermore, motions to strike pursuant to Rule 12(f) are directed only to pleadings. According to Rule 7, a document is a pleading only if it corresponds to one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and a reply to an answer. Fed. R. Civ. P. 7(a).

"[T]he decision of whether to strike all or part of a pleading rests within the sound discretion of the [c]ourt." Barnes v. District of Columbia, 289 F.R.D. 1, 6 (D.D.C. 2012) (citations omitted). "Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money." Gibson v. Confie Ins. Grp. Holdings, Inc., 2017 WL 2936219, at *12 (D.S.C. July 10, 2017). "[S]uch motions are to be granted infrequently" and are reviewed for abuse of discretion: "decisions that are reasonable, that is, not arbitrary, will not be overturned." Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 246–47 (4th Cir. 2007) (quoting Seay v. Tenn. Valley Auth., 339 F.3d 454, 480 (6th Cir. 2003)).

Plaintiffs filed a motion to strike the declarations and affidavits of Dr. Kallingal, Dr. Park, and Dr. Gillcrist. ECF No. 116 at 1. The court summarizes plaintiffs' most pertinent arguments in turn. See generally ECF Nos. 115; 116. Plaintiffs emphasize that there are contradictions and inaccuracies between the affidavits and the government's previous motions. ECF No. 116 at 3. Specifically, plaintiffs contend that the affidavits "contradict[] both [the] Nursing Intraoperative Note and their previous key motions." Id. at 5. Later in the motion, plaintiffs identify that the affidavits state that Dr. Kallingal was the primary surgeon with Dr. Parks assisting. This assertion purportedly contradicts the government's answer that Dr. Park was properly supervised and the government's

response to plaintiffs' motion for summary judgment which stated that the consent form identified the surgery would be performed by or under the direction of Dr. Kallingal. Id. at 11–12. Plaintiffs also contend that aspects of the affidavits must be stricken as inadmissible hearsay where Drs. Kallingal and Park purportedly made statements not based on their personal knowledge but "based on upon [sic] the hearsay statements of Dr. Nancy Gillcrist." Id. at 6. Consequently, plaintiffs move to strike the affidavits, or portions of them, on the grounds that the declarations create unfair prejudice. Id. at 16.

In response, the government first emphasizes that the R&R fully considered whether the affidavits were admissible and found that plaintiffs attacked the credibility—rather than the admissibility—of the affidavit testimony and, upon a review of the testimony, the magistrate judge found the affidavits admissible. ECF No. 120 at 1–2 (referencing ECF No. 101 at 10-11 n.6). The government thereafter noted that this court also considered plaintiffs' arguments in its order resolving the motions for summary judgment and rejected plaintiffs' argument that the court should strike the affidavits. Id. at 2 (citing ECF No. 110 at 11–12). Consequently, this issue has been well settled. Id. In any event, the government provides two arguments in favor of denying plaintiffs' motion to strike. Id. First, the government emphasizes that Federal Rule of Civil Procedure 12(f) is not a basis to strike an affidavit as it is restricted to striking pleadings, not supplements such as affidavits. Id. Second, the government notes that plaintiffs once again merely challenge the credibility of the affidavits, not the admissibility of the affidavits, which is not a valid basis to strike the affidavits. Id. at 3. Thus, the government requests the court deny plaintiffs' motion to strike. Id. at 4.

9

In reply, plaintiffs argue that the government's response was ineffective because it did not address the "severe inaccuracies and contradictions" that plaintiffs identified in their motion. ECF No. 122 at 1–2. Plaintiffs contend that the motion to strike is restricted to the statements that defendants made in their answer—for example, that Dr. Park was properly supervised. Id. at 2–3. Plaintiffs also aver that the court should grant their motion to strike because the Kallingal, Park, and Gillcrist "declarations failed miserably to meet the standards under [Fed. R. Civ. P.] 56(c)(5)." Id. at 5. Finally, plaintiffs request that the court deny the government's response because it does not comply with the requirements of Rule 56(c)(4) of the Federal Rules of Civil Procedure. Id. at 12.

The court denies plaintiffs' motion to strike for several reasons. For one thing, motions to strike pursuant to Fed. R. Civ. P. 12(f) are directed only to pleadings. A document is a pleading only if it corresponds to one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and a reply to an answer. Fed. R. Civ. P. 7(a). Thus, a motion to strike is the incorrect procedural mechanism to strike the affidavits included in support of the government's motion for summary judgment and therefore plaintiffs' motion is only relevant to plaintiffs' request to strike from the government's answer that Dr. "Park was properly supervised." See ECF No. 49 ¶ 15.

Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, 252 F.3d at 347 (internal quotation marks and citations omitted). When presented with a motion to strike, "the court must view the

pleading under attack in a light most favorable to the pleader." Clark, 152 F.R.D. at 71. The court finds that the government's averment that Dr. Park was proper supervised does not inherently contradict the later filed affidavits that stated Dr. Park assisted with the surgery because a doctor may be supervised while assisting the primary surgeon on a case. See Kallingal Decl. ¶ 26 ("Dr. Grace Park performed perioperative matters such as positioning the patient, assisting me in placing the ports and foley catheter, and then assisting at the bedside for the case."); Park Decl. ¶ 13 ("Dr. Kallingal operated the robot while I performed matters such as positioning the patient, helping with prepping and draping the patient, and assisting at the bedside as a first assist during the procedure."). Construing the government's answer in the light most favorable to the pleader, the court finds that the statement that Dr. Park was properly supervised is not an insufficient defense or redundant, immaterial, impertinent, or scandalous. See Fed. R. Civ. P. 12(f). Thus, the court denies plaintiffs' motion to strike.

### III.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion in limine and **DENIES** the motion to strike.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**February 29, 2024**
**Charleston, South Carolina**