IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| HARREY ANTHONY BROWN; and<br>KESHA LYNETTE BROWN,<br><br>        Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | No. 2:21-cv-03801-DCN<br><br>**ORDER** |

This matter is before the court on plaintiffs Harrey Anthony Brown ("Mr. Brown") and Kesha Lynette Brown's ("Mrs. Brown") (together, "plaintiffs") motion for reconsideration of this court's order, ECF No. 110, denying plaintiffs' motion for summary judgment, ECF No. 61, and granting in part and denying in part defendants United States of America (the "United States" or the "government"), Dr. George J. Kallingal ("Dr. Kallingal"), and Grace E. Park's ("Dr. Park") (together, "defendants") motion for summary judgment and motion for certification, ECF No. 75. ECF Nos. 152;[1] 187; 203.[2] For the reasons set forth below, the court denies the motion for reconsideration.

---

[1] Plaintiffs caption this motion as a motion in limine and a motion to reconsider. ECF No. 152. In this order, the court solely resolves the motion to reconsider.

[2] The plaintiffs style each of these motions slightly differently. See ECF Nos. 152 (Motion for Reconsideration); 187 (Motion for Reconsideration); 203 (Motion for No-Evidence Summary Judgment). In essence, each of these motions asks the court to reconsider its previous denial of plaintiffs' motion for summary judgment, ECF No. 61. Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). For these reasons, the court considers these three motions together in this order and interprets them as a single motion for reconsideration with multiple supplements.

1

## I. BACKGROUND

This case arises out of an allegedly failed medical procedure that Mr. Brown underwent in May 2019. Mr. Brown was diagnosed with prostate cancer in December 2018, and in March 2019, he and his wife attended a comprehensive prostate cancer clinic at the Brooke Army Medical Center ("BAMC") Urology Clinic in Fort Sam Houston, Texas to discuss various treatment options. ECF No. 46, Amend. Compl. ¶¶ 12–13. Plaintiffs allege that they met with Dr. Kallingal, a urology oncology surgeon at BAMC, who recommended that Mr. Brown undergo a robotic-assisted laparoscopic radical prostatectomy. Id. ¶ 13. Defendants dispute this account and claim that before meeting Dr. Kallingal, plaintiffs met with several other physicians. For example, defendants claim that on February 4, 2019, plaintiffs met with "Dr. Morales," who purportedly wrote in his visit notes that he had recommended "active surveillance" for Mr. Brown's "very low risk prostate cancer." ECF No. 75-5, Kallingal Decl. ¶ 11. Mr. Brown allegedly "still prefer[red] surgery," so Dr. Kallingal met Mr. Brown for the first time on March 27, 2019. Id. ¶¶ 11, 13. At the visit, Mr. Brown elected to undergo the robotic-assisted laparoscopic prostatectomy ("RALP"). Amend. Compl. ¶ 13.

Plaintiffs allege that Dr. Kallingal claimed to possess "extensive experience and skill with performing the complex surgical procedure." Id. Mr. Brown claims he consented to the surgery based on the understanding that Dr. Kallingal would serve as the primary surgeon "with no resident involvement." Id. Dr. Kallingal disputes this, claiming that he did not represent that he would perform the surgery alone and that he would not have done so because "[a] robotic assisted laparoscopic prostatectomy cannot be performed by one person." Kallingal Decl. ¶ 19.

According to plaintiffs, BAMC changed the "primary surgeon" from Dr. Kallingal to Dr. Park, a resident physician at BAMC. Amend. Compl. ¶ 13. Plaintiffs allege that Dr. Kallingal never obtained Mr. Brown's authorization for Dr. Park to perform the procedure, and Dr. Kallingal instead falsified an informed consent form by forging Mr. Brown's signature. Id. Plaintiffs further allege that Dr. Park altered Mr. Brown's surgical dictation notes and fabricated a surgical counseling session to show that she had visited with him prior to the surgery. Id. Plaintiffs allege that due to Dr. Park's lack of skill and experience, the procedure resulted in "severe post-operative complications," including "a life-threatening illness and physical injuries to [Mr. Brown's] body." Id. ¶ 14. Mr. Brown has been required to undergo additional medical procedures to treat the resulting injuries. Id. ¶ 17.

Defendants dispute these claims. Instead, defendants assert that Dr. Park was the Chief Resident and did not perform the surgery. As Chief Resident, Dr. Park conducted a preoperative clearance visit with Mr. Brown. ECF No. 75-6, Park Decl. ¶ 10. On the day of the surgery, Dr. Park provided bedside assistance by positioning, prepping, and draping the patient. Id. ¶ 13. Dr. Kallingal was the attending surgeon who controlled the robot and performed the operation on Mr. Brown on May 9, 2019. Kallingal Decl. ¶ 26.

On November 19, 2021, plaintiffs, proceeding pro se, filed a complaint against the United States, Dr. Kallingal, and Dr. Park, as well as against BAMC and Dr. Alexander Ernest ("Dr. Ernest"). ECF No. 1. Plaintiffs filed an amended complaint on September 12, 2022, alleging three separate causes of action for negligence based on medical battery and medical malpractice. ECF No. 46, Amend. Compl. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C), all pretrial

proceedings in this case were referred to Magistrate Judge Baker. On February 10, 2023, the court granted in part and denied in part defendants' motion for substitution of parties and substituted the United States as a party for BAMC and Dr. Ernest. ECF No. 72.

On November 15, 2022, plaintiffs filed a motion for summary judgment. ECF No. 61. On April 3, 2023, defendants filed a motion for summary judgment and motion for certification. ECF No. 75. The magistrate judge issued a report and recommendation on June 14, 2023. ECF No. 101. On September 5, 2023, the court adopted the R&R and denied plaintiffs' motion for summary judgment, ECF No. 61, and granted in part and denied in part defendants' motion for summary judgment, ECF No. 75. ECF No. 110 (the "Summary Judgment Order"). In that order, the court dismissed Drs. Kallingal and Park and substituted the United States in their place. Id. at 13.

On March 25, 2024, the court issued an order granting in part plaintiffs' motion for reconsideration, ECF No. 136, of the Summary Judgment Order, ECF No. 110. ECF No. 148. The court revised its order with respect to granting the government summary judgment on plaintiffs' medical battery claim and, instead, denied the government's motion for summary judgment only as to whether Mr. Brown consented to surgery. Id. That reconsideration was heavily premised on the government's supplement, in which it disclosed additional documents relevant to Mr. Brown's consent. ECF No. 143.

On March 25, 2024, plaintiffs filed a second motion for reconsideration of this court's order granting in part and denying in part the motions for summary judgment, ECF No. 110, this time seeking reconsideration of the court's denial of plaintiffs' motion for summary judgment, ECF No. 152. On April 22, 2024, the government responded in opposition to the motion for reconsideration, ECF No. 156, to which plaintiffs replied on

May 6, 2024, ECF No. 166. On June 13, 2024, plaintiffs filed a supplement to their second motion for reconsideration, which they styled as a third motion for reconsideration, but which operates as a supplement to the pending second motion for reconsideration. ECF No. 187. On June 26, 2024, the government responded in opposition to that supplement, ECF No. 194, and plaintiffs replied on July 8, 2024, ECF No. 198. On July 15, 2024, plaintiffs filed another supplement to their second motion for reconsideration, which they styled as a motion for no-evidence summary judgment, but which operates as a supplement to the pending second motion for reconsideration. ECF No. 203. On July 26, 2024, the government responded in opposition, ECF No. 204, to which plaintiffs replied on August 5, 2024, ECF No. 207. As such, the motion is fully briefed and ripe for the court's review.

## II.  STANDARD

### A. Pro Se Litigants

Plaintiffs are proceeding pro se in this case. Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### B. Motion for Reconsideration

A motion for reconsideration is generally raised via Rules 59 and 60 of the Federal Rules of Civil Procedure. Rule 59(e) allows a party to file a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e). The rule provides an "extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks and citation omitted). When a motion to reconsider brought pursuant to Rule 59(e) is untimely, courts construe the motion as one filed under Rule 60(b). See Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 412 (4th Cir. 2010); see also J.C. v. Fairfax Cnty. Pub. Schs., 2023 WL 5032784, at *1 n.1 (4th Cir. Aug. 8, 2023) (explaining that plaintiffs' motion was filed more than 28 days after the district court entered its dismissal order, so the motion is properly construed under Fed. R. Civ. P. 60(b)); Wriglesworth v. Esper, 765 F. App'x 6 (4th Cir. 2019) (per curiam) (same). Accordingly, the court construes plaintiffs' motion as a Rule 60(b) motion.

Federal Rule of Civil Procedure 60(b) states that,

> the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

### C. Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

Initially, the court notes that plaintiffs have failed to justify their multiple successive motions.[3] The Fourth Circuit has not opined on this issue, but other circuits

---

[3] No "federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment." Essex Ins. Co. v. Foley, 827 F. Supp. 2d 1326, 1329 n.2 (S.D. Ala. 2011). Indeed, "it sets bad precedent to allow parties to file serial motions for summary judgment" because repetitive motion practice undermines both the court's and

7

have overwhelmingly held that the decision of whether to consider a successive summary judgment motion is committed to the district court's discretion. See Hoffman v. Tonnemacher, 593 F.3d 908, 910–12 (9th Cir. 2010) (citing cases from the Second, Fifth, Sixth, Seventh, Eighth, Eleventh, and D.C. Circuits); F.D.I.C. v. Kooyomjian, 220 F.3d 10, 15–16 (1st Cir. 2000). Nevertheless, the plaintiffs are pro se and the court liberally construes their motions. See Gordon, 574 F.2d at 1151. Generously construed, the court considers these three motions together in this order and styles them as a single motion for reconsideration with multiple supplements.[4] The plaintiffs ask the court to reconsider its decision on their motion for summary judgment, ECF No. 61. ECF Nos. 152; 187; 203. Prior to delving into the merits of their motion, the court finds it helpful to summarize its conclusion as to the plaintiffs' previous motion for reconsideration, ECF No. 136, which the court resolved partially in plaintiffs' favor, ECF No. 148.

In the order resolving plaintiffs' first motion for reconsideration of the order resolving the government's motion for summary judgment, the court ultimately

---

the parties' interests in efficiency and finality. Woodson v. Aspen Power, L.L.C., 2014 WL 11512251, at *2 (E.D. Tex. July 3, 2014); see KTAQ of Dall., LLC v. Simons, 2013 WL 5567146, at *7 (N.D. Tex. Oct. 8, 2013). For those reasons, "successive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion." Brown v. City of Syracuse, 673 F.3d 141, 147 n.2 (2d Cir. 2012). Courts routinely deny such motions on those grounds. See, e.g., Hicks v. T.L. Cannon Corp., 66 F. Supp. 3d 312, 313–14 (W.D.N.Y. 2014). Accordingly, district courts within the Fourth Circuit have found successive motions for summary judgment strongly disfavored and have denied such motions on that basis alone. See Wootten v. Commonwealth of Va., 2016 WL 4742336, at *3 (W.D. Va. Sept. 12, 2016); Mey v. Venture Data, LLC, 2017 WL 10398567, at *1–2 (N.D.W. Va. July 6, 2017); White v. Date Trucking, LLC, 2018 WL 11469493, at *1 (D. Md. July 20, 2018); Vivos Acquisitions, LLC v. Health Care Res. Network, LLC, 2022 WL 18671064, at *1 (E.D. Va. Oct. 26, 2022).

[4] Though the court presently considers plaintiffs' filings as a motion to reconsider, such does not guarantee that future motions will be considered similarly. In other words, if the court determines that any future motions plaintiffs may file are, in fact, successive motions for summary judgment, the court may dispose of those motions summarily.

concluded that, "[a]ltogether, the evidence before the court today is meaningfully different from the evidence before the court on the motions for summary judgment." ECF No. 148 at 29. Considering the government's supplement, ECF No. 143, "the court note[d] that there is now a genuine dispute of material fact as to whether Mr. Brown signed the RALP Consent Form on May 9, 2019." ECF No. 148 at 29–30. "When the court consider[ed] the evidence in the light most favorable to the plaintiffs—discrepancies in the hospital records as to when Mr. Brown consented, with whom he consented, and the evidence from [Patricia] Hale [("Hale")] that the signature on the RALP Consent Form does not match Mr. Brown's signature—a reasonable jury could return a verdict for the plaintiffs on the medical battery claim.[5]" Id. at 30 (citing Anderson, 477 U.S. at 255) (footnote in original). As such, the court granted plaintiffs' motion for reconsideration, ECF No. 136, and denied the government's motion for summary judgment as to medical battery because it found it debatable whether Mr. Brown consented to the surgery with the RALP Consent Form on May 9, 2019. Id. (citing ECF No. 75).

Plaintiffs now bring a second motion for reconsideration and this time they request the court reconsider its decision, ECF No. 110, and grant plaintiffs' prior motion for summary judgment, ECF No. 61. ECF Nos. 152; 187; 203. All the relevant arguments raised in the second motion for reconsideration and its supplements were fully considered in the court's order resolving the first motion for reconsideration, in which it

---

[5] "To be clear, the court is not finding for the plaintiffs on this claim. Upon reconsideration, it denies both parties' motions for summary judgment as to the medical battery claim in addition to the medical malpractice claim and loss of consortium portion of damages. See ECF Nos. 61; 75. At trial, plaintiffs bear the burden of proof for their claims of medical battery, medical malpractice, and loss of consortium as an element of damages." ECF No. 148 at 30 n.7.

9

revived Mr. Brown's medical battery claim for trial.  See ECF No. 152 at 13–24; ECF No. 148.  As such, many of plaintiffs' arguments in favor of their second motion for reconsideration are mooted by the order that the court issued after plaintiffs filed the motion.  See ECF Nos. 148; 152 at 13–24.  Nevertheless, the court considers whether it should grant summary judgment to the plaintiffs on any of their causes of action.

In short, there are three causes of action before the court: (1) medical battery, (2) medical malpractice, and (3) loss of consortium.  There is no dispute that plaintiffs' negligence claims are governed by Texas law.  See also RAI Credit LLC v. WeiserMazars LLP, 2013 WL 3776514, at *3 (D.S.C. June 5, 2013) (explaining that South Carolina follows the doctrine of lex loci delicti, and under the lex loci rule, tort actions are governed by the law of the place of the wrong), report and recommendation adopted, 2013 WL 3776518 (D.S.C. July 17, 2013).  The court sets out the relevant standard for each of plaintiffs' claims and explains why genuine issues of material fact remain for each such that plaintiffs' multiple motions for summary judgments and requests for reconsideration fail.  Ultimately, the court denies plaintiffs' request that it reconsider its denial of their motion for summary judgment because a reasonable trier of fact could find for either party on the medical battery claim, on the medical malpractice claim, and on Mrs. Brown's loss of consortium claim.  See ECF Nos. 148; 152 at 13–24. Any overlap with this court's prior orders results from the simple fact that the court has fully considered and resolved plaintiffs' arguments on these issues with regards to summary judgment.

### A. Medical Battery

Under Texas law, "[m]edical treatment will not constitute a battery unless it is provided without the patient's consent." Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005). "[T]he general rule in Texas is that a physician who provides treatment without consent commits a battery." Miller ex rel. Miller v. HCA, Inc., 118 S.W.3d 758, 767 (Tex. 2003). Moreover, there is no medical battery if the primary surgeon does not disclose an assisting surgeon's level of participation or experience. Benge v. Williams, 472 S.W.3d 684, 709 (Tex. App. 2014), aff'd, 548 S.W.3d 466 (Tex. 2018). Texas courts have also held that a medical-battery plaintiff could not prevail under a theory that the assisting surgeon was not his or her chosen surgeon where the plaintiff had consented to participation by other staff members, including residents. Haynes v. Beceiro, 219 S.W.3d 24, 25 (Tex. App. 2006); Benge, 472 S.W.3d at 689–90.

Mr. Brown testified to going back to Dr. Park's office and signing a consent form the day of the surgery on May 9, 2019. Mr. Brown Dep. at 24:23–25:4. Mrs. Brown also testified that she and Mr. Brown went back to Dr. Park's office that morning for Mr. Brown to sign an electronic consent form. Mrs. Brown Dep. at 35:9–37:12. However, a review of the RALP Consent Form shows that it does not contain Dr. Park's signature. See ECF No. 143-1 at 3. Dr. Park testified that the RALP Consent Form does not contain her signature but that the signature on the page might be that of Nancy Gillcrist. Park Decl. ¶ 11. The government provided a declaration from Nancy Gillcrist in which she reviewed the RALP Consent Form and recognized the signature as her own, though she did not recall the day, patient, or surgery. ECF No. 75-9, Gillcrist Decl. ¶¶ 7–10.

In its first order granting plaintiffs' motion for reconsideration, the court noted that there were discrepancies in the hospital records as to when Mr. Brown consented, with whom he consented, and evidence from Hale that the signature on the RALP Consent Form did not match Mr. Brown's signature, such that a reasonable trier of fact could return a verdict for the plaintiffs on the medical battery claim. ECF No. 148 at 30. Conversely, the government identified a consent form stating that Mr. Brown's surgery would be performed by Dr. Kallingal and other staff and residents of the facility, and there is testimony from plaintiffs that they consented to the surgery, such that a reasonable jury could alternatively return a verdict for the government on the medical battery claim. See ECF Nos. 110 at 14; 148 at 24–30.

In their motion for reconsideration, supplements, and various lengthy briefs, plaintiffs have not identified a mistake, newly discovered evidence, fraud, or any other reason that justifies relief that would require the court to revise its decision.[6] See Fed. R. Civ. P. 60(b); see generally ECF Nos. 152; 166; 187; 198; 203; 207. As such, the court denies the motion for reconsideration and reiterates that plaintiffs' motion for summary judgment as to medical battery is denied. Plaintiffs will have the opportunity to prove their medical battery claim by a preponderance of the evidence at the bench trial.

---

[6] Plaintiffs relentlessly claim that the government and its witnesses have submitted false declarations. See, e.g., ECF No. 152 at 14–15, 22; 166 at 31–32; 187 at 11; 198 at 2–4, 26; 203 at 6–7, 19–20; 207 at 18–19. In its prior order resolving plaintiffs' first motion for reconsideration, the court provided a comprehensive summary of expert witnesses and admissible evidence that remains in force. ECF No. 148 at 11–16. The court also attaches that summary to this order. As this court has reiterated on multiple occasions, at trial each party will be required to establish that the evidence and testimony they present are relevant, authenticated, and admissible pursuant to the Federal Rules of Evidence. Plaintiffs' unsubstantiated allegations of deceit do not rise to the level of "fraud" required for a successful Rule 60(b) motion.

### B. Medical Malpractice

Medical malpractice requires the plaintiffs prove: (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. Quijano v. United States, 325 F.3d 564, 567 (5th Cir. 2003) (applying Texas law). In short, there is a genuine issue of material fact as to the standard of care provided by Dr. Park and a genuine issue of material fact as to whether the anastomotic leakage proximately caused Mr. Brown's injuries. See R&R at 28–29; ECF Nos. 110 at 15–19; 148 at 10–11.

In their motion for reconsideration, supplements, and various lengthy briefs, plaintiffs have not identified mistake, newly discovered evidence, fraud, or any other reason that justifies relief that would require the court to revise its decision. See Fed. R. Civ. P. 60(b); see generally ECF Nos. 152; 166; 187; 198; 203; 207. As such, the court denies the motion for reconsideration and reiterates that plaintiffs' motion for summary judgment as to medical malpractice is denied. Plaintiffs will have the opportunity to prove their medical malpractice claim by a preponderance of the evidence at the bench trial.

### C. Loss of Consortium

The court reiterates its prior observation that, under Texas law, loss of consortium is an element of damages. See Rodriguez v. Blaine Larsen Farms, Inc., 2022 WL 18034478, at *1 (N.D. Tex. Apr. 21, 2022); see also Strickland v. Medlen, 397 S.W.3d 184, 191 (Tex. 2013). As such, Mrs. Brown's loss of consortium claim is inextricably tied to the other two claims of medical battery and medical malpractice. See Gonzales v.

SNH SE Tenant TRS, Inc., 2015 WL 1033466, at *4 (S.D. Tex. Mar. 9, 2015) (explaining that claims for loss of consortium are derivative claims that do not lie absent an underlying personal injury claim belonging to the other spouse). Since there are genuine issues of material fact as to both medical battery and medical malpractice, there are also genuine issues of material fact as to loss of consortium. In their motion for reconsideration, supplements, and various lengthy briefs, plaintiffs have not identified mistake, newly discovered evidence, fraud, or any other reason that justifies relief that would require the court to revise its decision. See Fed. R. Civ. P. 60(b); see generally ECF Nos. 152; 166; 187; 198; 203; 207. As such, the court denies the motion for reconsideration and reiterates that plaintiffs' motion for summary judgment as to loss of consortium is denied. Plaintiffs will have the opportunity to prove their loss of consortium claim as an element of damages at the bench trial.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** plaintiffs' second motion for reconsideration.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**August 30, 2024**
**Charleston, South Carolina**