**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| HARREY ANTHONY BROWN; and KESHA LYNETTE BROWN, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:21-cv-03801-DCN |
| vs. | ) ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on several evidentiary issues. Specifically, plaintiffs Harrey Anthony Brown ("Mr. Brown") and Kesha Lynette Brown's ("Mrs. Brown") (together, "plaintiffs") have filed five documents purporting to be motions in limine. ECF Nos. 152; 167; 169; 173; 184. The court interprets these filings as three motions in limine, ECF Nos. 152; 167; 184, a supplement to a motion in limine, ECF No. 173, and a motion to strike, ECF No. 169. The matter is also before the court on plaintiffs' motion for leave to call rebuttal fact witnesses, ECF No. 208, and on defendant United States of America's (the "United States" or the "government") motion in limine, ECF No. 192. For the reasons set forth below, each of plaintiffs' motions are denied, and the government's motion in limine is granted in part and denied in part.

## I.  BACKGROUND

### A.  Factual Background

This case arises out of an allegedly failed medical procedure that Mr. Brown underwent in May 2019. According to plaintiffs, Mr. Brown was diagnosed with prostate cancer in December 2018, and in March 2019, he and his wife attended a comprehensive

prostate cancer clinic at the Brooke Army Medical Center ("BAMC") Urology Clinic in Fort Sam Houston, Texas to discuss various treatment options. ECF No. 46, Amend. Compl. ¶¶ 12–13. Plaintiffs allege that they met with Dr. George Kallingal ("Dr. Kallingal"), a urology oncology surgeon at BAMC, who recommended that Mr. Brown undergo a robotic-assisted laparoscopic radical prostatectomy. Id. ¶ 13. Defendants[1] dispute this account and claim that before meeting Dr. Kallingal, plaintiffs met with several other physicians. For example, defendants claim that on February 4, 2019, plaintiffs met with "Dr. Morales," who purportedly wrote in his visit notes that he had recommended "active surveillance" for Mr. Brown's "very low risk prostate cancer." ECF No. 75-5, Kallingal Decl. ¶ 11. Mr. Brown allegedly "still prefer[red] surgery," so Dr. Kallingal met Mr. Brown for the first time on March 27, 2019. Id. ¶¶ 11, 13. At the visit, Mr. Brown elected to undergo the robotic-assisted laparoscopic prostatectomy ("RALP"). Amend. Compl. ¶ 13.

Plaintiffs allege that Dr. Kallingal claimed to possess "extensive experience and skill with performing the complex surgical procedure." Id. Mr. Brown claims he consented to the surgery based on the understanding that Dr. Kallingal would serve as the primary surgeon "with no resident involvement." Id. Dr. Kallingal disputes this, claiming that he did not represent that he would perform the surgery alone and that he

---

[1] Plaintiffs initially brought this suit against the United States, Dr. Kallingal, Dr. Grace Park ("Dr. Park"), the BAMC, and Dr. Alexander Ernest ("Dr. Ernest"). See ECF No. 1, Compl. The court refers to these individuals collectively as "defendants" when explaining the background and procedural history of this case. However, the court notes that the United States is the only remaining defendant in this case. See ECF Nos. 72; 110.

would not have done so because "[a] robotic assisted laparoscopic prostatectomy cannot be performed by one person." Kallingal Decl. ¶ 19.

According to plaintiffs, BAMC changed the "primary surgeon" from Dr. Kallingal to Dr. Grace Park ("Dr. Park"), a resident physician at BAMC. Amend. Compl. ¶ 13. Plaintiffs allege that Dr. Kallingal never obtained Mr. Brown's authorization for Dr. Park to perform the procedure, and Dr. Kallingal instead falsified an informed consent form by forging Mr. Brown's signature. Id. Plaintiffs further allege that Dr. Park altered Mr. Brown's surgical dictation notes and fabricated a surgical counseling session to show that she had visited with him prior to the surgery. Id. Plaintiffs allege that, due to Dr. Park's lack of skill and experience, the procedure resulted in "severe post-operative complications," including "a life-threatening illness and physical injuries to [Mr. Brown's] body." Id. ¶ 14. Mr. Brown has been required to undergo additional medical procedures to treat the resulting injuries. Id. ¶ 17.

Defendants dispute these claims. Instead, defendants assert that Dr. Park was the Chief Resident and did not perform the surgery. As Chief Resident, Dr. Park conducted a preoperative clearance visit with Mr. Brown. ECF No. 75-6, Park Decl. ¶ 10. On the day of the surgery, Dr. Park provided bedside assistance by positioning, prepping, and draping the patient. Id. ¶ 13. Dr. Kallingal was the attending surgeon who controlled the robot and performed the operation on Mr. Brown on May 9, 2019. Kallingal Decl. ¶ 26.

### B. Procedural History

On November 19, 2021, plaintiffs, proceeding pro se, filed a complaint against the United States, Dr. Kallingal, and Dr. Park, as well as against BAMC and Dr. Ernest. ECF No. 1. Plaintiffs filed an amended complaint on September 12, 2022, alleging three

separate causes of action for negligence based on medical battery and medical malpractice.  ECF No. 46, Amend. Compl.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Baker.  On February 10, 2023, the court granted in part and denied in part defendants' motion for substitution of parties and substituted the United States as a party for BAMC and Dr. Ernest.  ECF No. 72.

On November 15, 2022, plaintiffs filed a motion for summary judgment.  ECF No. 61.  On April 3, 2023, defendants filed a motion for summary judgment and motion for certification.  ECF No. 75.  The magistrate judge issued a report and recommendation on June 14, 2023, in which she recommended that plaintiffs' motion for summary judgment be denied, that the government's motion for certification be granted, and that the government's motion for summary judgment be granted in part and denied in part. ECF No. 101, R&R.  Notably, the magistrate judge recommended granting the government's motion for summary judgment on plaintiffs' medical battery claim because the evidence in the record showed that Mr. Brown signed a consent form prior to surgery, and there was no evidence in the record showing that Mr. Brown's signature was forged. Id. at 19–24.  On September 5, 2023, the court adopted the R&R and denied plaintiffs' motion for summary judgment, ECF No. 61, and granted in part and denied in part defendants' motion for summary judgment, ECF No. 75.  ECF No. 110 (the "Summary Judgment Order").  In that order, the court also dismissed Drs. Kallingal and Park and substituted the United States in their place.  Id. at 13.

4

On February 29, 2024, plaintiffs moved for the court to reconsider the Summary Judgment Order.  ECF No. 136.  Thereafter, on March 7, 2024, the government filed additional documents related to whether Mr. Brown consented to the RALP.  ECF No. 143 (the "Supplemental Filing").  On March 25, 2024, the court granted plaintiffs' motion to reconsider in part.  ECF No. 148.  The court found that there was now a genuine issue of material fact over whether Mr. Brown signed the RALP consent form, and the court revived plaintiffs' claim for medical battery, based largely on the new documents contained in the government's Supplemental Filing.  Id. at 26–30.

Since the time when court granted the motion to reconsider in part, plaintiffs have unleashed a flurry of new filings.  Though many of these filings repeat the same arguments, they may generally be divided into two groups: the first group consists of plaintiffs' various renewed attempts to convince the court to grant summary judgment in their favor, ECF Nos. 152; 187; 203, and the second group consists of various evidentiary issues at issue in this order, ECF Nos. 152; 167; 169; 173; 184; 208.  On August 30, 2024, the court denied all motions in this first group—i.e., plaintiffs' renewed requests for summary judgment.  ECF No. 216.  As such, only the evidentiary challenges remain before the court.

### C.  Motions Currently Before the Court

On March 25, 2024—the same day the court granted plaintiffs' motion to reconsider, ECF No. 148—plaintiffs filed a document captioned as a "Motion in Limine to Exclude Evidence Regarding Defendants' Suplementle [sic] Filing and Plaintiffs

Motion to Reconsider," ECF No. 152 (plaintiffs' "first motion in limine").[2]  On April 22, 2024, the government responded in opposition, ECF No. 156, to which plaintiffs replied on May 6, 2024, ECF No. 166.

Also on May 6, 2024, plaintiffs filed a document captioned as a "Motion in Limine and Response to United States' Identification of Expert Witness."  ECF No. 167 (plaintiffs' "second motion in limine").  On May 15, 2024, plaintiffs filed a document captioned as a "Motion in Limine to Exclude Expert Testimony of Jeffrey S. Taylor, Forensic Document Examiner."  ECF No. 173.  However, that document largely covers the same subject-matter as plaintiffs' second motion in limine, see id., and the court therefore considers this document as a supplement to plaintiffs' second motion in limine.  On May 20, 2024, the government responded in opposition to plaintiffs' second motion in limine.[3]  ECF No. 174.  Plaintiffs replied on May 28, 2024.  ECF No. 176.[4]

On May 7, 2024, plaintiffs filed a document captioned as a "Motion in limine to Preclude Defendants' Affirmative Defense Evidence and Argument."  ECF No. 169.  For reasons explained in more detail below, the court finds that this document is not actually a motion in limine and is, instead, a motion to strike pursuant to Rule 12(f).  In any event,

---

[2] This filing included both plaintiffs' first motion in limine and a motion to reconsider.  ECF No. 152.  The court examined the document and denied it to the extent it is a motion to reconsider in a previous order.  ECF No. 208.  In this order, the court reexamines the document only to the extent that it could be considered a motion in limine.

[3] The government's response is captioned as a response to both ECF No. 167 and ECF No. 173.  ECF No. 174.

[4] The Browns filed two replies on May 28, 2024.  ECF Nos. 176; 177.  The docket lists ECF No. 177 as a reply concerning plaintiffs' second motion in limine and ECF No. 176 as a reply concerning a different one of plaintiffs' motions.  Id.  However, it appears that the docket descriptions for these filings may be reversed.

the government responded in opposition on May 21, 2024, ECF No. 175, to which plaintiffs replied on May 28, 2024, ECF No. 177.

On June 3, 2024, plaintiffs filed a document captioned as a "Motion in Limine to Preclude United States' Pretrial Disclosures." ECF No. 184 (plaintiffs' "third motion in limine"). The government responded in opposition on June 13, 2024. ECF No. 187.

On June 18, 2024, the government filed a motion in limine. ECF No. 192. On June 28, 2024, plaintiffs responded in opposition, ECF No. 196, and they then supplemented their response on July 8, 2024, ECF No. 197. The government replied on July 12, 2024. ECF No. 199.

On August 8, 2024, plaintiffs filed a "Motion for Leave to Call Rebuttal Fact Witness." ECF No. 208. The government responded on August 23, 2024, ECF No. 210, to which plaintiffs replied on August 27, 2024, ECF No. 213.[5] The motions are therefore fully briefed and are ripe for the court's review.

## II.  STANDARD

### A.  Pro Se Litigants

Plaintiffs are proceeding pro se in this case. Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal district court is charged with liberally construing a complaint or petition filed

---

[5] Plaintiffs' reply was deficient because it did not include a wet signature. ECF No. 214. The clerk of court's office mailed plaintiffs a deficiency memo on September 3, 2024, ordering plaintiffs to sign their reply within ten days. ECF Nos. 214; 217. This deadline has not yet passed, and the court has not yet received plaintiffs' updated reply. The court trusts that plaintiffs will cure their defective filing and therefore considers this reply in this instance. However, for reasons explained below, the arguments advanced in this reply do not alter the court's ultimate conclusion.

by a <u>pro se</u> litigant to allow the development of a potentially meritorious case. <u>See</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. <u>See</u> <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 390–91 (4th Cir. 1990).

"Although the pleadings of pro se litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure." <u>Johnson v. Hendrick Auto. Grp.</u>, 2011 WL 6032706, at *3 (W.D.N.C. Dec. 5, 2011) (quoting <u>In re Thomas</u>, 2008 WL 112042, at *3 n.4 (W.D. Va. Jan. 9, 2008)), <u>aff'd</u>, 471 F. App'x 192 (4th Cir. 2012). "[E]ven for pro se litigants, courts are not responsible for making basic evidentiary objections." <u>In re Pequeno</u>, 126 F. App'x 158, 165 (5th Cir. 2005). "While pro se litigants are afforded some latitude when it comes to technical procedural requirements, the Court expects them to follow the same rules of evidence and procedure as is required by those authorized to practice law." <u>El Bey v. Celebration Station</u>, 2006 WL 2811497, at *2 (W.D.N.C. Sept. 28, 2006), <u>aff'd</u>, 242 F. App'x 917 (4th Cir. 2007). That includes requiring <u>pro se</u> plaintiffs to establish the authenticity of any document they put before the court. <u>Klabiner v. Rinaldi</u>, 2001 WL 823529, at *6 (M.D.N.C. June 20, 2001), <u>aff'd</u>, 22 F. App'x 347 (4th Cir. 2002).

**B. Motion in Limine**

The purpose of a motion in limine is to obtain a preliminary ruling on the admissibility of a particular evidentiary matter. <u>Luce v. United States</u>, 469 U.S. 38, 40 n.2 (1984). A court will exclude evidence on a motion in limine only if the evidence is "clearly inadmissible for any purpose." <u>Hall v. Sterling Park Dist.</u>, 2012 WL 1050302, at

8

*2 (N.D. Ill. Mar. 28, 2012).  Courts routinely defer ruling on motions in limine until the court has more information on the disputed evidentiary matter.  <u>Finch v. Covil Corp.</u>, 388 F. Supp. 3d 593, 612 n.14 (M.D.N.C. 2019) (collecting cases), <u>aff'd</u> 972 F.3d 507 (4th Cir. 2020).

### C.  Motion to Strike

Rule 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>> (1) on its own; or
>> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).  Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  <u>Waste Mgmt. Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks and citations omitted); <u>see also</u> <u>Brown v. Inst. For Fam. Centered Servs., Inc.</u>, 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005) ("Motions to strike are . . . granted only for egregious violations.").  When presented with a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader."  <u>Clark v. Milam</u>, 152 F.R.D. 66, 71 (S.D.W. Va. 1993).  Furthermore, motions to strike pursuant to Rule 12(f) are directed only to pleadings.  According to Rule 7, a document is a pleading only if it corresponds to one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and a reply to an answer.  Fed. R. Civ. P. 7(a).

"[T]he decision of whether to strike all or part of a pleading rests within the sound discretion of the [c]ourt." Barnes v. District of Columbia, 289 F.R.D. 1, 6 (D.D.C. 2012) (citations omitted). "Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money." Gibson v. Confie Ins. Grp. Holdings, Inc., 2017 WL 2936219, at *12 (D.S.C. July 10, 2017). "[S]uch motions are to be granted infrequently" and are reviewed for abuse of discretion: "decisions that are reasonable, that is, not arbitrary, will not be overturned." Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 246–47 (4th Cir. 2007) (quoting Seay v. Tenn. Valley Auth., 339 F.3d 454, 480 (6th Cir. 2003)).

## III.   DISCUSSION

The court will take each of the pending motions in the order in which they were filed.

### A. Plaintiffs' First Motion in Limine

In their first motion in limine, plaintiffs seek to exclude the following evidence:

(1) Any testimony, evidence, statement, or inference to Defendants' Supplemental Filing filed March 7, 2024.

(2) Any testimony, evidence, statement, or inference to Dr. George Kallingal's Declarations filed on April 3, 2023, impacted by Defendants' false and misleading Supplemental Filing, and March 7, 2024, in support of the Defendants' frivolous and contradictory Supplemental Filing.

(3) Any testimony, evidence, statement, or inference to Dr. Nancy Gillcrist's Declaration filed April 3, 2023, also impacted by Defendants' false and misleading Supplemental Filing.

(4) Any testimony, evidence, statement, or inference to Dr. Grace Park's Declaration filed April 3, 2023, also impacted by Defendants' false and misleading Supplemental Filing.

ECF No. 152 at 1–2. Before the court considers the merits of plaintiffs' arguments, the court will briefly pause to review what these documents are.

10

When defendants moved for summary judgment on April 3, 2023, they supported their motion with, among other things, declarations from Dr. Kallingal, Dr. Park, and Dr. Nancy Gillcrist ("Dr. Gillcrist"). See ECF Nos. 75-5, Kallingal Decl.; 75-6, Park Decl.; 75-9, Gillcrist Decl. When Magistrate Judge Baker recommended granting them summary judgment on plaintiffs' medical battery claim, she did so in part based on the testimony in these three declarations. R&R at 19–24. Likewise, the court relied in part on the testimony contained in these declarations when it adopted the R&R and initially granted summary judgment in favor of the government on plaintiffs' medical battery claim. See ECF Nos. 110 at 12–14; 148 at 26–27. Specifically, the court and the R&R relied on Mr. and Mrs. Brown's testimony that Mr. Brown signed a consent form the day of the surgery and Dr. Gillcrist's declaration that she likely witnessed that signature. ECF No. 110 at 12–13.

Then the government made its Supplemental Filing on March 7, 2024. ECF No. 143. This filing included various documents related to Mr. Brown's consent—and therefore his medical battery claim. See generally ECF No. 143-1. The court will describe those documents in turn. First, the government provided a second declaration from Dr. Kallingal to explain and interpret the new medical records. Id. at 1–2 ("2d Kallingal Decl."). Second, the government produced a signed consent form for anesthesia that was signed on May 8, 2019, at 10:49:46 a.m., showing Mrs. Brown witnessed and signed it (the "Anesthesia Consent Form"). Id. at 4. Third, the government produced a signed consent form for the robotic-assisted laparoscopic prostatectomy ("RALP") procedure which Mr. Brown signed at 9:25:42 a.m. with Robert Messenger LVN (now known as Violet Messenger) ("Messenger") witnessing the

11

signature (the "RALP Consent Form").  Id. at 3.  This document also contained the
signature of the Counseling Physician over the printed name "GEORGE JOSEPH
KALLINGAL," but the signature is likely that of Dr. Gillcrist.  See id.

      In addition to these documents, the Supplemental Filing also included two new
documents.  First, the governments' filing included a form labeled with the number
00801 which is titled "MEDICAL RECORD – UNIVERSAL PROTOCOL:
PROCEDURE VERIFICATION CHECKLIST."  ECF No. 143-1 at 5 ("Procedure
Verification Checklist").  This document has five signatures.  See id.  Dr. Kallingal
averred that his signature was the "Provider Signature" and that he verified Mr. Brown's
informed consent to perform the RALP at 10:45 a.m.  2d Kallingal Decl. ¶ 7.  However,
Mr. Brown pointed the court's attention to the first signature on the Procedure
Verification Checklist where a clinical staff member signed to indicate that "consent
[wa]s complete" at 9:20 a.m.  ECF No. 143-1 at 5.  Mr. Brown had not purportedly
signed the RALP Consent Form until 9:25 a.m.  See ECF No. 143-1 at 3.  Without
additional context, it was unclear to the court whether the other four signatures on the
Procedure Verification Checklist independently verified Mr. Brown's consent to the
surgery or relied on that first 9:20 a.m. signature.  ECF No. 148 at 21.

      Second, the governments' filing included a form labeled PAU/PREP & HOLD
which is identified by the number 000804.  ECF No. 143-1 at 6 ("Prep & Hold Form").
At the top of the page, under "Pre-Admission Unit" an unidentified person indicated that
Mr. Brown had signed his Anesthesia Consent but had not yet signed his Surgical
Consent.  Id.  At the bottom of that page, in the comments section, an unidentified person
wrote "no surgical consent."  Id.  Dr. Kallingal explained that the Prep & Hold Form

12

indicated that, on May 9, 2019, Mr. Brown was placed in BAMC's surgical prep and hold

area at 8:45 a.m.  2d Kallingal Decl. ¶ 5.  According to the document, when Mr. Brown

got to the surgical prep and hold area at 8:45 a.m., Mr. Brown had not yet signed his

RALP Consent Form.  See id.; see also ECF No. 143-1 at 6.  The form showed, however,

that Mr. Brown had signed his Anesthesia Consent Form the prior day.  2d Kallingal

Decl. ¶ 5; see also ECF No. 143-1 at 6.

In its order on the plaintiffs' motion for reconsideration, the court considered the

new documents and ultimately concluded that there is a genuine dispute of material fact

as to whether Mr. Brown signed the RALP Consent Form.  ECF No. 148 at 26–30.  The

court explained:

> Mr. Brown testified to going back to Dr. Park's office and signing a
> consent form the day of the surgery on May 9, 2019.  Mr. Brown Depo. at
> 24:23–25:4.  Mrs. Brown also testified that she and Mr. Brown went back
> to Dr. Park's office that morning for Mr. Brown to sign an electronic
> consent form.  Mrs. Brown Depo. at 35:9–37:12.  However, a review of the
> RALP Consent Form shows that it does not contain Dr. Park's signature.
> See ECF No. 143-1 at 3.  Dr. Park testified that the RALP Consent Form
> does not contain her signature but that the signature on the page might be
> that of [Dr.] Gillcrist.  Park Decl. ¶ 11.  The government provided a
> declaration from [Dr.] Gillcrist in which she reviewed the RALP Consent
> Form and recognized the signature as her own, though she did not recall the
> day, patient, or surgery.  ECF No. 75-9, Gillcrist Decl. ¶¶ 7–10.  Despite the
> inconsistency over whether it was Dr. Gillcrist or Dr. Park who walked
> plaintiffs through informed consent, the court [previously] found on the
> motion for summary judgment that there was no genuine issue of material
> fact that Mr. Brown consented.
>
> Yet that brings us to the two new documents which need to be placed
> in context with the other evidence before the court.  First, there is a
> discrepancy with the Prep & Hold Form and Mr. and Mrs. Brown's
> testimony as to consent.  The Prep & Hold Form indicates that when Mr.
> Brown was brought to the surgical prep and hold area—an area where it is
> unclear whether Mrs. Brown could accompany him—he had not yet signed
> the RALP Consent Form.  ECF No. 143-1 at 6.  Mrs. Brown and Mr. Brown
> both indicated that, on the morning of the surgery, Dr. Park took them back
> to her office and had Mr. Brown consent to surgery.  See Mr. Brown Depo.
> at 24:23–25:4; Mrs. Brown Depo. at 35:9–37:12.  Dr. Park testified that she

13

did not witness Mr. Brown sign the RALP Consent Form that morning, because her signature is not on the form. Park Decl. ¶ 11. Mrs. Brown testified that she was allowed to stay with Mr. Brown until he was rolled back for surgery—though it is unclear whether that was the surgical prep and hold area, or into surgery itself. Mrs. Brown Depo. at 35:9–12. The Prep & Hold Form indicates that, when Mr. Brown was brought into the surgical prep and hold area at 8:45 a.m., he had not signed the RALP Consent Form. ECF No. 143-1 at 6; 2d Kallingal Decl. ¶ 6. Thus, taking the evidence in the light most favorable to the plaintiffs, the Prep & Hold Form creates an ambiguity in terms of who witnessed Mr. Brown's consent and whether the RALP Consent Form clearly shows his consent. Second, the Procedure Verification Form indicates that at 9:20 a.m., a clinical staff confirmed that Mr. Brown had signed the RALP Consent Form. ECF No. 143-1 at 5. However, the RALP Consent Form, itself, shows that Mr. Brown purportedly signed that form at 9:25:42 a.m., five minutes later. ECF No. 143-1 at 3. This too is a discrepancy. Finally, the court circles back to plaintiffs' contentions of forgery: that the RALP Consent Form does not have Mr. Brown's signature but that the signature on that form was forged as evidenced by the signature's purported deviation from Mr. Brown's standard signature. ECF Nos. 63 at 6; 63-2; 63-3; 63-4; 63-5.

ECF No. 148 at 26–27. Based on these inconsistencies and the expert report submitted by Patricia Hale ("Hale"), plaintiffs' forensic document examiner and handwriting expert, the court determined that a reasonable jury could return a verdict in favor of plaintiffs' on their medical battery claim.[6] Id. at 30.

Though unclear, plaintiffs' first motion in limine appears to be premised on their assertion that Drs. Kallingal's, Gillcrist's and Park's declarations are unreliable based on information in the Supplemental Filing. See ECF No. 152 at 13–14. In particular, plaintiffs argue that the Procedural Verification Checklist contradicts the declarations. Id. at 15. Plaintiffs therefore argue that the declarations should be stricken from the record. Id. at 14–16. Plaintiffs also appear to argue that the documents in the

---

[6] The court reiterated, however, that this does not mean plaintiffs have won this case. ECF No. 146 at 30 n.7. They still have the burden to prove their claims at trial. Id.

government's Supplemental Filing are similarly unreliable and should not be permitted to be introduced as evidence at trial.  See id. at 16.

In response, the government states that it does not intend to introduce its Supplemental Filing, Dr. Kallingal's declarations, Dr. Park's declaration, or Dr. Gillcrist's declaration into evidence and argues that plaintiffs' motion should be denied for this reason.  ECF No. 156 at 6.  Alternatively, to the extent plaintiffs are arguing that Mr. Brown's medical records contained in the Supplemental Filing should not be admitted, the government argues that this motion should be denied because these records are relevant to the question of Mr. Brown's consent.  ECF No. 156 at 7.  Likewise, to the extent plaintiffs are arguing that the medical records are inaccurate, the government suggests that the motion be denied and that plaintiffs be given the opportunity to object to the authenticity of the records at trial.  Id.  Similarly, to the extent plaintiffs are arguing that testimony from Drs. Kallingal, Park, and Gillcrist should be excluded, the government contends that the court should deny this motion because plaintiffs have not offered any reason why the testimony of these witnesses is inadmissible.  ECF No. 156 at 8.

In reply, plaintiffs address the government's assertion that it does not plan to enter the declarations of Drs. Kallingal, Park, or Gillcrist into evidence.  ECF No. 166 at 15–16.  Plaintiffs note that the court relied on these declarations when ruling on its previous motion for summary judgment.  Id. at 16.  Therefore, plaintiffs argue that, if these documents are not in evidence, there is no longer a triable issue of fact.  Id.  Relatedly, because there is no triable issue of fact, plaintiffs aver that there is no need for Drs. Kallingal, Park, or Gillcrist to testify at trial at all.  ECF No. 166 at 31–34.

15

As the court explained above, plaintiffs' first filing is both a motion in limine and a motion to reconsider. ECF No. 152. The court has already denied the portions of this filing acting as a motion to reconsider. ECF No. 216. Yet it is difficult to tell where in the document the motion to reconsider ends and the motion in limine begins. In any event, to the extent plaintiffs argue, in their first motion in limine, that there is no longer a triable issue of fact as to their medical battery claim, the court rejects this argument for the same reasons the court denied the portions of this document acting as a motion for reconsideration. See ECF No. 216 at 11–12.

Moreover, because the government has indicated that it does not intend to introduce its Supplemental Filing or any of the declarations of Drs. Kallingal, Park, or Gillcrist at trial, the court denies plaintiffs' first motion in limine as moot. See, e.g., Kargin v. Grace Food Distrib., Inc., 2014 WL 12551209, at *1 (E.D. Va. Jan. 31, 2014) (denying motion in limine as moot when the opposing party represents that it does not plan to introduce the disputed evidence at trial). To the extent plaintiffs object to any of the records contained in the Supplemental Filings or to the testimony of Drs. Kallingal, Park, or Gillcrist being introduced as trial, plaintiffs may object at that time.

**B. Plaintiffs' Second Motion in Limine**

In their second motion in limine, plaintiffs seek to exclude the testimony of Jeffrey Taylor ("Taylor"), the government's forensic document examiner ("FDE"). ECF No. 167. The government identified Taylor as an expert, who "conducted a detailed examination and comparison of [Mr.] Brown's questioned and known signatures and will testify concerning his opinions related to that examination. ECF No. 162 at 1. In Taylor's expert report, Taylor explained the specific methodology he used in examining

Mr. Brown's signature, but Taylor was ultimately unable to determine whether the signature on the RALP Consent Form was Mr. Brown's. See ECF No. 174-1 at 1.

Plaintiffs "do not dispute, or challenge Mr. Taylor's [sic] is qualified as an expert by his knowledge, skill, experience, training, or education." ECF No. 167 at 3. Instead, they argue that Taylor's testimony is irrelevant and does not comply with the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), predominately because Taylor's methodology was not reliable and because his conclusions will not help the trier of fact. ECF No. 167 at 3; 173 at 9–14, 23–24. Specifically, plaintiffs contend that, because Taylor was ultimately unable to determine whether or not Mr. Brown signed the consent form, his testimony is unhelpful and therefore should not be admitted. ECF No. 173 at 23–24.

Additionally, much of plaintiffs' argument focuses on the various differences in the manner in which Hale conducted her analysis and Taylor conducted his analysis. Id. at 18–21. For instance, plaintiffs contend that Hale supports her analysis with procedures outlined by the American Society for Testing and Materials ("ASTM"), while Taylor cites to different standards from the Academy Standards Board ("ASB"). Id. at 18–19. Likewise, plaintiffs contend that Hale used a "Peer Review Methodology," which requires a second independent examination of the signature by another professional, while Taylor's report was not confirmed by a second independent analysis. Id. at 21. Moreover, by failing to mention, reference, or directly refute Hale, plaintiffs argue that Taylor cannot be considered a "rebuttal Expert Witness" as the term was used in the court's March 26, 2024 Scheduling Order. ECF No. 176 at 13.

In response, the government argues that Taylor's testimony is both relevant and will be helpful to the trier of fact. ECF No. 174 at 5. The government contends that Taylor's trial testimony will be helpful to the trier of fact because it "will help the trier of fact understand why it could not be determined whether or not Mr. Brown wrote the questioned signature" on the RALP Consent Form. Id. The government further argues that the issue of whether Mr. Brown's signed the RALP Consent Form his highly relevant to plaintiffs' medical battery claim, so Taylor's testimony is highly probative. Id. at 5–6. The government contends that Taylor's methods were reliable because, as plaintiffs note, Taylor based his examination on ASB standards, which are reliable because these procedures have "have 'general acceptability' in this field." Id. at 6 (quoting Oglesby v. Gen. Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999)). To the extent plaintiffs believe Taylor's testimony or methods are unreliable, the government suggests that plaintiffs may bring those issues up during cross-examination at trial. Id. at 7.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence.

<u>Daubert</u>, 509 U.S. at 592 n.10.  District courts serve as gatekeepers for expert testimony and carry a "special obligation" to ensure that expert testimony is reliable and relevant. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999).  Under <u>Daubert</u>, the court's gatekeeping role requires that it address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue."  509 U.S. at 592.  The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid."  <u>Id.</u> at 592–93.  The second inquiry "goes primarily to relevance."  <u>Id.</u> at 591.  Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute.  <u>Id.</u> at 593.  "A review of the caselaw after <u>Daubert</u> shows that the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendments.  "<u>Daubert</u> did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'"  <u>Id.</u> (quoting <u>United States v. 14.38 Acres of Land Situated in Leflore Cnty.</u>, 80 F.3d 1074, 1078 (5th Cir. 1996)).

The court agrees with the government on plaintiffs' challenge to Taylor's methods.  As plaintiffs concede, Taylor conducted his analysis according to ASB standards.  ECF No. 174-1 at 2.  While Hale may have used different standards when conducting her analysis, plaintiffs have not explained why the ASB standards used by Taylor are unreliable, and the court finds that the government has met its burden of showing that Taylor's methods are scientifically valid.  <u>See id.</u> at 2, 5 (explaining standards used in Taylor's analysis and how those standards were developed).  Similarly,

19

even if Taylor's results were not confirmed by a second independent examination, as plaintiffs contend, this does not necessarily mean that Taylor's analysis is unreliable.  See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig., 626 F. Supp. 3d 814, 827 (D. Md. 2022) ("What matters is whether the expert's technique or theory has been subject to peer review, not his or her specific model applying that technique or theory in the litigation.")  To the extend plaintiffs believe Taylor's methods were unreliable, they will have the opportunity to question him about those methods during cross-examination at trial.

The question of whether Taylor's testimony will be relevant or helpful is a closer call.  As the court has explained in both this order and in many of its previous orders, one of the factual disputes to be resolved at trial is whether Mr. Brown signed the RALP Consent Form.  See, e.g., ECF No. 216 at 11–12.  Resolving this factual dispute is necessary to adjudicate plaintiffs' claim for medical battery.  Id.; see also Miller ex rel. Miller v. HCA, Inc., 118 S.W.3d 758, 767 (Tex. 2003) ("[T]he general rule in Texas is that a physician who provides treatment without consent commits a battery.").  If Taylor can provide insight into whether Mr. Brown's signature on that document is valid, then his testimony would likely be relevant, as it might aid the finder of fact in resolving the dispute.  See ECF No. 216 at 11–12; Daubert, 509 U.S. at 593.  However, in his expert report, Taylor does not provide an opinion on that question.  Indeed, he states that he cannot tell whether the signature is valid or not.  ECF No. 174-1 at 1.  Plaintiffs' concern that his testimony will be unhelpful is therefore reasonable.

Nevertheless, the government indicates that it expects Taylor to testify at trial on why, specifically, it cannot be determined whether the signature is authentic.  ECF No.

174 at 5.  If that is the case, the testimony could be helpful for the trier of fact to assess Hale's determination that the signature was not valid.  As such, the court will be better able to determine the issue of relevancy at trial.  See Finch, 388 F. Supp. 3d at 612 n.14 (noting that "[c]ourts are often better situated to assess the value and utility of evidence during trial").  The court therefore denies plaintiffs' second motion in limine without prejudice.  Plaintiffs are free to renew this objection at trial, and the court will determine then whether Taylor's testimony will be helpful.

### C.  Plaintiffs' Motion to Strike

In this motion, plaintiffs argue that the government should not be permitted to raise any affirmative defense argument because the evidence before the court shows that their affirmative defenses are poorly plead and meritless.  ECF No. 169 at 1.  They then recite the standard for a motion to strike under Federal Rule of Civil Procedure 12(f).  ECF No. 169 at 2.

In response, the government reads this motion not as a motion in limine but rather as a motion to strike under Rule 12(f).  ECF No. 175 at 1.  The government argues that the motion should be denied for three reasons.  First, the government argues that plaintiffs'' motion should be denied because it is an untimely motion to strike.  Id. at 4.  Second, the government argues that plaintiffs' motion should be denied as moot with regard to the government's first six defenses because those defenses have already been resolved in previous orders.  Id. at 4–5.  Third, the government argues that the motion should be denied because plaintiffs have not met their heavy burden of proving that the affirmative defenses should be stricken.  Id. at 5.

In reply, plaintiffs essentially make two arguments.  First, they contend that the government is wrong when it argues many of its affirmative defenses are no longer relevant based on the court's previous orders.  ECF No. 177 at 19–23.  In making this argument, plaintiffs refer back to some of their previous filings (specifically a different motion in limine, ECF No. 115, and their motion to reconsider, ECF No. 136) and rehash various arguments on the merits of their claims.  See ECF No. 177 at 19–23.  They specifically take issue with the court's previous orders reconsidering and denying summary judgment on their medical battery claim.  ECF No. 177 at 21–22 (citing ECF No. 148).  Second, they argue that their motion is not actually a motion to strike.  ECF No. 177 at 23.  Instead, they say that it is akin to a discovery motion under Rule 37(c)(1).  Id. at 23–24.

The court finds that, though this motion is labeled as a motion in limine, it operates as a motion to strike under Rule 12(f).  As explained above, a Rule 12(f) motion is used to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  That is precisely what plaintiffs are seeking when they argue that the government should not be able to assert any arguments related to the affirmative defenses it pleaded in its answer.  See generally ECF No. 169 at 22.  Indeed, the second page of this document describes the standard for Rule 12(f) motions to strike, and there are numerous places throughout the document where plaintiffs request that the court "strike" the government's affirmative defenses.  ECF No.  at 2, 18–27.  Thus, while plaintiffs may argue that the government's assertion that this is a motion to strike "factually, legally baseless, and lacks merit," ECF No. 177

at 22, the face of plaintiffs' motion very much suggests otherwise, <u>see</u> ECF No. 169 at 2, 18–27.

Beyond that, this motion to strike is untimely. Motions to strike must be filed "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). The government asserted these affirmative defenses when it answered plaintiffs' amended complaint on September 22, 2022. ECF No. 49, Answer. Plaintiffs' deadline for filing a motion to strike therefore expired nearly two years ago. <u>See</u> Fed. R. Civ. P. 12(f)(2). For this reason, the court denies plaintiffs' motion to strike. Moreover, to the extent, if at all, this motion could be construed as a motion in limine, the court denies it as unripe because plaintiffs have not identified a specific piece of evidence the government plans to introduce at trial regarding its affirmative defenses. Of course, should any such evidence be introduced, plaintiffs remain free to object at trial, and the court may rule on those objections at that time.

### D. Plaintiffs' Third Motion in Limine

In its pretrial disclosures, the government indicated that it intends to call the following nine witnesses at trial: (1) Dr. Kallingal, (2) Dr. Gillcrist, (3) Dr. Park, (4) Messenger, (5) Capt. David Nicholson ("Capt. Nicholson"), (6) Dr. Matthew Van Dam ("Dr. Van Dam"), (7) Dequan Jones ("Jones"), (8) Dr. Daniel Canter ("Dr. Canter"), and (9) Taylor. ECF No. 178 at 1. In their third motion in limine, plaintiffs argue that none of these nine witnesses should be permitted to testify. ECF No. 184. Broadly speaking, plaintiffs' reasoning can be divided into two arguments. First, plaintiffs argue that some or all of the witnesses should not be permitted to testify because those witnesses are

either not reliable or their testimony is not necessary.  ECF No. 184 at 10–13.  Second, plaintiffs argue that the court should exclude three of the witnesses—Dr. Van Dam, Capt. Nicholson, and Jones—because the government failed to disclose or identify those witnesses in a timely manner.  Id. at 15–17.  The court will address these two arguments separately.

### 1.  Unreliable or Unnecessary Witnesses

As for their first argument, plaintiffs specifically contend that Dr. Gillcrist, Messenger, and Dr. Canter cannot be considered reliable witnesses because their testimony is contradicted by the Supplemental Filing.  Id. at 10–11.  Plaintiffs also believe that the government withdrew the declarations of Dr. Kallingal, Dr. Park, and Dr. Gillcrist, which shows that these witnesses are not reliable.  Id. at 12.  Moreover, because the court based its prior order denying plaintiffs' motion for summary judgment on the declarations of Dr. Kallingal, Dr. Park, and Dr. Gillcrist, and the government is now withdrawing those declarations, plaintiffs argue that the court should reverse its earlier denial of summary judgment.  Id. at 12–13.  Thus, because plaintiffs believe there is no longer a triable issue of fact, plaintiffs contend that it is not necessary to go to trial and hear testimony from the other witnesses, such as Dr. Canter and Mr. Taylor, so those witnesses should be prevented from testifying as well.  ECF No. 184 at 13.

In response, the government argues that the testimony of Dr. Kallingal, Dr. Gillcrist, Messenger, and Taylor are all relevant because they are all expected to testify that Mr. Brown consented to the surgery.  ECF No. 190 at 5–6.  Specifically, the government expected Dr. Kallingal "to testify that Mr. Brown consented to the RALP surgery to be performed by himself and other staff residents.  Id. at 5.  The government

then points out that both Dr. Gillcrist's and Messenger's signatures appear to be on Mr. Brown's RALP Consent form, and the government expects these witnesses to testify that they confirmed Mr. Brown's consent.  Id. (citing ECF No. 75-8).  Likewise, the government argues Taylor's testimony will be relevant to the consent issue because he will testify on whether the signature on the RALP Consent Form is valid.  Id.  The government also argues that the testimony of Drs. Park and Canter is highly relevant to plaintiffs' medical malpractice claim.  ECF No. 190 at 6.  The government expects Dr. Park to testify "regarding the RALP surgery itself, the post-operative complications that Mr. Brown encountered, and Mr. Brown's post-operative care, including the diagnosis and treatment of his post-operative anastomotic leak."  Id.  Likewise, the government expects Dr. Canter, its expert urologist, to testify "that the complications that Mr. Brown experienced after the RALP are a common clinical scenario that are unavoidable despite best efforts."  Id.

As the court has explained on numerous occasions, there are triable issues of fact in this case, and the Supplemental Filing did not obviate the need for a trial.[7]  See, e.g., ECF No. 216 at 10–14.  Specifically, there are three causes of action before the court: (1) medical battery, (2) medical malpractice, and (3) loss of consortium.  As for the medical battery claim, there remains a genuine issue of material fact regarding whether Mr. Brown consented to surgery.  Id. at 11–12.  As for their medical malpractice claim, there remains a genuine issue of material fact as to the standard of care provided by Dr. Park

---

[7] To the extent plaintiffs' third motion in limine could be read as yet another motion to reconsider the court's denial of plaintiffs' previous motions for summary judgment, the motion is denied for the same reasons the court denied plaintiffs' most recent motion to reconsider.  ECF No. 216.

and a genuine issue of material fact as to whether the anastomotic leakage proximately caused Mr. Brown's injuries. <u>Id.</u> at 13. Thus, to the extent plaintiffs argue that any or all of the government's witnesses are unnecessary because there are no triable issues of fact in this case, the court rejects this argument for the same reasons it rejected plaintiff's most recent motions to reconsider. <u>See generally</u> <u>id.</u>

As for plaintiffs' arguments regarding specific witnesses, the court likewise finds that Dr. Kallingal, Dr. Gillcrist, and Messenger are all likely to have relevant information pertaining to the whether Mr. Brown consented to surgery, and Dr. Park and Dr. Canter are likely to have relevant information pertaining to Mr. Brown's medical malpractice claim.[8] <u>See</u> ECF No. 190 at 5–6; <u>see also</u> Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). To the extent plaintiffs believe these witnesses offer irrelevant information plaintiffs will have the opportunity to object to their testimony at trial. Likewise, to the extent plaintiffs believe these witness are presenting unreliable information, plaintiffs will have the opportunity to cross-examine them at trial.

### 2. Previously Undisclosed Witnesses

Plaintiffs argue that the three remaining witnesses, Dr. Van Dam, Capt. Nicholson, and Jones should be excluded from testifying because the government failed to identify or disclose these witnesses in a timely manner. ECF No. 184 at 15–17. In response, the government first notes that it no longer plans to call Jones at trial. ECF No.

---

[8] The court discussed whether it is likely Taylor will have relevant information above when it considered plaintiffs' second motion in limine.

190 at 4–5.  The government had previously planned to call this witness to authenticate various medical records, but the parties have now agreed that the medical records in question may be admitted into evidence without the need for a witness to testify to their authenticity.  Id.  For this reason, the court denies plaintiffs' motion as moot to the extent it is directed at preventing Jones from testifying.

Next, the government argues that the court should not exclude testimony from Dr. Van Dam or Capt. Nicholson.  Id. at 6–8.  The government expects both Dr. Van Dam and Capt. Nicholson to testify that they each verified Mr. Brown's consent to the May 9, 2019 RALP and therefore is relevant to plaintiffs' medical battery claim.  Id. at 7.  "Specifically, Capt. Nicholson is expected to testify that he verified Mr. Brown's consent on May 9, 2019, and signed the Procedure Verification Checklist at 10:30 a.m.  And Dr. Van Dam is expected to testify that he verified Mr. Brown's consent on May 9, 2019, and signed the same Checklist at 10:35 a.m."  Id. (citations omitted).  According to the government, it did not disclose these witnesses earlier because the court initially granted summary judgment on plaintiffs' medical battery claim and did not revive this claim until the court granted plaintiffs' motion to reconsider on March 25, 2024.  Id.  The government contends that it disclosed these two witnesses after the court revived plaintiffs' medical battery claim in accordance with the court's March 26, 2024 scheduling order.  Id. at 8.

District courts are accorded "broad discretion" in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless.  Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (quoting S. States Rack &

Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)).  In making

this determination, district courts are guided by the following factors:

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise; (3) the extent to which
> allowing the evidence would disrupt the trial; (4) the importance of the
> evidence; and (5) the nondisclosing party's explanation for its failure to
> disclose the evidence.

S. States, 318 F.3d at 597.  The first four factors listed above relate primarily to the

harmlessness exception, while the last factor—addressing the party's explanation for its

nondisclosure—relates mainly to the substantial justification exception.  Id.  The party

failing to disclose information bears the burden of establishing that the nondisclosure was

substantially justified or was harmless.  Wilkins, 751 F.3d at 222 (citations omitted).

　　　The court finds that the Southern States factors weighs in favor of permitting Dr.

Van Dam and Capt. Nicholson to testify.  First, both Dr. Van Dam and Capt. Nicholson

are listed on Mr. Brown's medical records that plaintiffs attached to his complaint when

he initiated this lawsuit.  See ECF No. 1-1 at 29–30.  Therefore, even if these witnesses

could have been disclosed earlier, the inclusion of these witnesses could not have been a

complete surprise to plaintiffs.  Second, in both the government's response to this motion

and during a status conference on June 4, 2024, the government offered to allow plaintiffs

to conduct a video deposition of the remaining witnesses.  ECF Nos. 186; 190 at 7.

Plaintiffs have therefore had three months to conduct these two depositions, and the court

finds that this is adequate time to cure any surprise plaintiffs may have faced.  Third, the

court finds that Dr. Van Dam's and Capt. Nicholson's testimony would not disrupt trial.

Fourth, the court finds that both Dr. Van Dam and Capt. Nicholson are likely to have

important information regarding whether Mr. Brown consented to surgery—the central

issue in plaintiffs' medical battery claim.  See ECF No. 190 at 7.

Finally, the government's explanation for the delay in disclosing the witnesses is because the court had previously granted summary judgment on plaintiffs' medical battery claim, and the government claims it disclosed the witnesses after the court revived that claim.  Id.  While this may be true, the court notes that it revived plaintiffs' medical battery claim on March 25, 2024.  ECF No. 148.  Yet plaintiffs claimed at the status conference that the government did not disclose these witnesses until May 28, 2024—three months later.  ECF No. 186.  While the government likely could have disclosed these witnesses sooner, the court notes that the government did so within the deadline for disclosing witnesses set in the scheduling order, which was June 1, 2024.  See ECF No. 150.  The court therefore finds the government's explanation reasonable.  As such, the Southern States factors favor permitting the government to call Dr. Van Dam and Capt. Nicholson at trial.  See 318 F.3d at 597.  Plaintiffs' motion is denied to the extent it seeks to prevent the government from calling these two witnesses.

### E.  Government's Motion in Limine

In this motion, the government seeks to preclude plaintiffs from (1) calling Barbara Bowens ("Ms. Bownes") as a witness, (2) introducing Mr. Brown's polygraph examination, (3) introducing Mr. Brown's medical records that are not from the BAMC, and (4) introducing any expert report into evidence at trial if the expert is not testifying.  ECF No. 192 at 1.  The court will take each of these issues in turn.

#### 1.  Barbara Bowens

Ms. Bowens was previously the government's attorney on this case before her retirement from the U.S. Attorney's Office at the end of 2023.  ECF No. 192 at 3–4.

29

Plaintiffs indicated on their pretrial disclosures that they wish to call Ms. Bowens as a witness.  ECF No. 188 at 1.

The government notes that "courts view skeptically efforts to depose an opposing party's attorney, especially when the subject matter of the deposition may be intertwined with potentially privileged information, and such depositions are typically permitted only when the information sought is not available from another source."  ECF No. 192 at 2 (alteration omitted) (quoting Carr v. Double T Diner, 272 F.R.D. 431, 435 (D. Md. 2010)).  The government identifies that both the Eighth and Second Circuits have developed tests for when it is appropriate to depose opposing counsel.  ECF No. 192 at 3 (first citing Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986); and then citing In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, J.)).  Though formulated slightly differently, both tests indicate that opposing counsel should only be required to testify in limited circumstances.  See id. The government argues that plaintiffs have not indicated that there is a good reason, under either of these tests, for calling Ms. Bowens.  Id. at 3–4.

In response, plaintiffs explain that they want to call Ms. Bowens because they believe she behaved unethically while defending this case—specifically, plaintiffs believe Ms. Bowens put forward allegedly perjured testimony in the declarations of Drs. Kallingal, Park, and Gillcrist that the government filed with its summary judgment motion.  See ECF No. 196 at 8–12, 14–16.  Plaintiffs therefore wish to call Ms. Bowens "as a non-advocate attorney witness" so that they can cross-examine her regarding the false statements in those documents.  Id. at 15–16.

30

In their supplemental filings in opposition to the government's motion in limine, plaintiffs assert that they have more evidence suggesting that Ms. Bowens acted unethically while defending this case. They point specifically to the fact that the government "removed" the sworn declarations from Drs. Kallingal, Park, and Gillcrist from evidence. ECF No. 197 at 4–5. Plaintiffs suspect that the government did this because the declarations were proven "perjured." Id. at 4–5, 9. They claim that this shows that Ms. Bowens "intentionally, maliciously, deceitfully, and deceptively filed their false, misleading, and perjured sworn [declarations] over a year ago for the sole unethical and unlawful purpose of depriving the Plaintiffs of their rights and privileges secured by the Constitution and laws." ECF No. 197 at 4–5.

Plaintiffs also point to a video that was apparently produced by the University of South Carolina School of Law when Ms. Bowens won the 2024 Compleat Lawyer Awards. See id. at 7–8; ECF No. 197-1 (screenshot showing what the video looks like on YouTube). Plaintiffs describe that, in the video, United States Attorney Adair Boroughs and Assistant United States Attorney William Jordan state that Ms. Bowens is an ethical attorney. ECF No. 197 at 7. It is unclear what plaintiffs believe this video proves. As best the court can tell, plaintiffs appear to argue that the video demonstrates that Ms. Bowens violated the policy of the United States Attorney's Office and is evidence that the court should permit plaintiffs to question Ms. Bowens about her allegedly unethical behavior in this case. See ECF No. 197 at 7–9. Alternatively, plaintiffs could also be arguing that the video indicates that others in the United States Attorney's Office condone allegedly unethical behavior. See id. Either way, plaintiffs seem to believe this will help them prove their medical battery claim. Id. at 10–11.

In reply, the government maintains that plaintiffs have not provided a sufficient reason for calling opposing counsel as a witness. ECF No. 199 at 2. The government disputes plaintiffs' contention that the declarations of Drs. Kallingal, Park, and Gillcrist, were "proven perjured." ECF No. 199 at 3 (quoting ECF No. 196 at 15). Rather, the government explains that the reason the declarations were not included on the government's witness list was because the government expects to call Drs. Kallingal, Park, and Gillcrist to testify at trial. Id. Thus, the government argues that any nonprivileged testimony Ms. Bowens could offer is not relevant to plaintiffs' case. Id. Similarly, the government argues that the video regarding Ms. Bowen's receipt of the 2024 Compleat Lawyer Award is also not relevant and should not be permitted as evidence. Id. Finally, the government argues that the court should not permit plaintiffs to call Ms. Bowens under Rule 403 because her testimony would have little probative value and would unduly delay the trial and waste time. Id.

The court grants the government's motion with respect to Ms. Bowens. As the government points out, plaintiffs face a high burden in seeking to compel opposing counsel to testify. See Carr, 272 F.R.D. at 435 ("[C]ourts view skeptically efforts to depose an opposing party's attorney, especially when the subject matter of the deposition may be intertwined with potentially privileged information, and such depositions are typically permitting only when the information sought is not available from another source."). Plaintiffs have not met this burden. Importantly, while plaintiffs may disagree with facts asserted in the declarations of Drs. Kallingal, Park, and Gillcrist, and may even believe these declarations are inconsistent with other evidence, plaintiffs have not proven that these declarations contain perjured testimony or that Ms. Bowens acted unethically.

Indeed, that the declarations did not appear on the government's exhibit list is indicative of the fact that the government plans to call Drs. Kallingal, Park, and Gillcrist at trial—it does not prove that anything in the declarations is false, nor does it indicate that there is no longer a triable issue of fact in this case.  If plaintiffs disagree with Drs. Kallingal, Park, or Gillcrist, they will have the opportunity to cross-examine these witnesses at trial. As such, there is no reason to suspect that Ms. Bowens' testimony will help plaintiffs prove their medical battery claim.  The court therefore finds that Ms. Bowens' testimony is not relevant to the issues in this case and grants the government's motion to exclude her testimony accordingly.[9]  See Fed. R. Evid. 401; 402.

### 2. Mr. Brown's Polygraph Examination

In their pretrial disclosures, plaintiffs indicate that they seek to introduce Mr. Brown's polygraph examination into evidence.  ECF No. 188 at 2.  The government argues that Mr. Brown's polygraph test results should be excluded because polygraph test results are "generally inadmissible" and because there is "no consensus that polygraph evidence is reliable."  ECF No. 192 at 4–5 (first quoting United States v. Blake, 571 F.3d 331, 346 (4th Cir. 2009); and then quoting United States v. Scheffer, 523 U.S. 303, 309 (1998)).  The government also argues that, to the extent the Browns wish to introduce the polygraph test results to prove the truth of those results, the results should be excluded because they are inadmissible hearsay.  ECF Nos. 192 at 5; 199 at 4–5.

---

[9] To the extent plaintiffs are arguing they should be permitted to introduce the 2024 Compleat Lawyer Awards video, ECF No. 197-1 at 3, into evidence at trial, the court finds that this video is not at all relevant to the issues in this case because it has no bearing on any of the disputed facts of plaintiffs' claims.  See Fed. R. Evid. 401.

In response, plaintiffs explain that they seek to admit the polygraph results

because those test results indicate that the following statement from Mr. Brown is true:

> I Harrey A. Brown in conjunction with my polygraph here today I am here
> to prove the following statement is truthful.  I never spoke with Dr. Park
> until the morning of my surgery, [sic]  The morning of the surgery the only
> thing Dr. Park spoke to me about was the consent form for Dr. Kallingal to
> perform the surgery as agreed upon on March 27, 2019.

ECF No. 196 at 17.  Plaintiffs also argue that it would not be fair to exclude his

polygraph results as hearsay and permit the government to call nine witnesses who will

offer inadmissible hearsay at trial.[10]  ECF No. 196 at 6–7.  Plaintiffs also contend that the

court "has discretion to admit polygraph results where there is a valid stipulation."  ECF

No. 196 at 16.

In general, a statement is hearsay when "(1) the declarant does not make [the

statement] while testifying at the current trial or hearing; and (2) a party offers [the

statement] in evidence to prove the truth of the matter asserted in the statement."  Fed. R.

Evid. 801(c).  Hearsay statements are not admissible unless a federal statute, the Federal

Rules of Evidence, or the United States Supreme Court provides otherwise.  Fed. R. Evid.

802.

The statement Mr. Brown made during the polygraph examination was not made

while he was testifying, and plaintiffs overtly offer the statement to prove the truth of the

matter contained therein—i.e., that Mr. Brown did not speak to Dr. Park the morning of

his surgery.  See ECF No. 196 at 17.  Therefore, the court finds that this statement is

---

[10] Though plaintiffs argue that the government's witnesses "truly, indisputably, and justifiably should be excluded as inadmissible hearsay that is not subject to an exception under Federal Rules of Evidence 802 and 901," plaintiffs do not expand on this assertion or explain why the testimony of these witnesses includes inadmissible hearsay. ECF No. 196 at 6–7.

hearsay, and plaintiffs have not identified any exception to the hearsay rule that would make this statement admissible. Id. For this reason, the court finds that this statement is inadmissible and grants this portion of the government's motion accordingly.[11] See Fed. R. Evid. 802. If Mr. Brown wishes to testify under oath at trial about whether he spoke to Dr. Park on the day of his surgery, he is welcome to do so.

### 3. Mr. Brown's Medical Records

The government notes that plaintiffs indicated in their pretrial disclosures that they intend to offer Mr. Brown's medical records as evidence at trial. ECF No. 192 at 5. At the most recent status conference, the parties stipulated that any of Mr. Brown's medical records may be admitted. ECF No. 186. However, the government contends that it only stipulated to the admissibility of medical records Mr. Brown received from the BAMC and not any other medical records. ECF No. 192 at 5–6 & n.3. The government is concerned that, by not identifying any specific medical records in their disclosures, plaintiffs may intend to introduce other medical records, and the government moves to preclude from doing so. Id. In response, plaintiffs argue that his medical records are admissible under the business records exception to the hearsay rule, but plaintiffs do not specifically say whether they plan to introduce any medical records beyond those that the parties already stipulated are admissible. ECF No. 196 at 18–19.

---

[11] Even if this statement were not hearsay, the court agrees with the government that polygraph results are generally not admissible, see Blake, 571 F.3d at 346, and plaintiffs have not identified that they plan to call a witness to authenticate the polygraph results, see ECF No. 188. Moreover, even if plaintiffs are correct that polygraph results can sometimes be admitted by joint stipulation the parties, there does not appear to have been such a stipulation in this case. See ECF No. 196 at 16.

The court finds that this portion of the government's motion is unripe.  Plaintiffs'
pretrial disclosures are not clear on whether the medical records plaintiffs seek to offer
are those he obtained from the BAMC or some other source.  See ECF No. 188 at 1
(listing "Medical Records of Plaintiff Harrey Brown (Exhibit A)" as an exhibit plaintiffs
intend to introduce).  If, at trial, plaintiffs attempt to enter records into evidence that the
government finds objectionable, the government may object at that time.  For the time
being, the court denies this portion of the government's motion without prejudice.

### 4. Expert Reports

The government notes that plaintiffs have indicated that they wish to introduce
two expert reports into evidence.  ECF No. 192 at 6–7.  However, the government argues
that, if plaintiffs do not intend to call the expert to testify at trial, that expert's report
cannot be admitted into evidence because the reports would be inadmissible hearsay.
ECF No. 192 at 6–7.  In response, plaintiffs state that they plan to have their expert
witnesses testify at trial via video, as the parties agreed during the last status conference.
ECF No. 196 at 19–20.  In reply, the government reiterates that it has no objection to the
plaintiffs' experts testifying remotely.  ECF No. 199 at 4.  The government objects only
to plaintiffs seeking to admit expert reports in lieu of live testimony.  Id. at 4–5.

Based on plaintiffs' assurances that they do intend to call their expert witnesses
via video, it does not appear that plaintiffs plan to introduce expert reports in lieu of live
testimony.  See ECF No. 196 at 19.  The court therefore denies this portion of the
government's motion as moot.  If, at trial, plaintiffs do attempt to introduce expert reports
in lieu of live testimony, the government may object at that time.

### F. Plaintiffs' Motion for Leave to Call Rebuttal Fact Witness

Plaintiffs seek to call Magistrate Judge Mary Gordon Baker as a rebuttal fact witness. ECF No. 208 at 1. They argue that Magistrate Judge Baker relied on the declarations of Drs. Kallingal, Park, and Gillcrist when she previously recommended granting summary judgment. ECF No. 208 at 2. Plaintiffs believe that Magistrate Judge Baker will testify that, without the declarations from these witnesses, the government's arguments are "fatally flawed." Id. at 2–3. Once again, plaintiffs argue that the court must withdraw its denial of summary judgment and grant their "No-evidence MSJ as matter of law."[12] ECF No. 208 at 13. Generously construed, plaintiffs further contend that Magistrate Judge Baker is not disqualified from testifying by Rule 605 because she is no longer presiding over this case. ECF No. 208 at 15–16, 18–20. Ultimately, plaintiffs want to call Magistrate Judge Baker because she "can present critical lay witness testimony as her opinion has tremendous value that comes from firsthand knowledge that will significantly bolster the Plaintiffs' case and impact the just outcome of this case." ECF No. 208 at 21. They believe that Magistrate Judge Baker will testify that, if given the choice today, she would "now would more likely than not recommend that Defendants' Motion for Certification be denied, Defendants [sic] Motion for Summary Judgment be denied, Dr. Park and Dr. Kallingal not be dismissed from this action, and the United States be substituted in their place, the Plaintiffs' Motion for Summary

---

[12] The court has already denied this motion. To the extent plaintiffs argue, again, that the court should reconsider its denial of plaintiffs' motion for summary judgment, that portion of their motion is denied for the same reason the court denied plaintiffs' most recent motions to reconsider. See ECF No. 216.

Judgment be granted and all other causes of action should not be dismissed." ECF No. 213 at 4–5.

In response, the government concedes that there is no specific rule against calling Magistrate Judge Baker as a witness but argues that doing so would not be appropriate in this case because plaintiffs have not demonstrated that she will be able to provide relevant testimony. ECF No. 210 at 2. The court agrees.

"While a judge enjoys no special privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony." United States v. Dowdy, 440 F. Supp. 894, 896 (W.D. Va. 1977). The testimony plaintiffs seek from Magistrate Judge Baker on whether she would rule in favor of plaintiffs on various motions the court has already reconsidered, ECF Nos. 148; 216, will not help plaintiffs prove the factual issues at stake in this trial. To reiterate, there are three pending causes of action in this case: (1) medical battery, (2) medical malpractice, and (3) loss of consortium. As for the medical battery claim, there is a genuine issue of material fact over whether Mr. Brown consented to surgery with the RALP Consent form, ECF No. 148 at 30. As for the medical malpractice claim, there are genuine issues of material fact as to the standard of care provided by Dr. Park and as to whether the anastomotic leakage proximately caused Mr. Brown's injuries. ECF No. 216 at 13. Magistrate Judge Baker's testimony would not have any tendency to make these facts at issue "more or less probable." Fed. R. Evid. 401(a). As such, her testimony is not relevant and is inadmissible. See Fed. R. Evid. 402. Plaintiffs' motion is therefore denied.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES WITHOUT PREJUDICE** plaintiffs' first motion in limine, **DENIES WITHOUT PREJUDICE** plaintiffs' second motion in limine, **DENIES** plaintiffs' motion to strike, **DENIES** plaintiffs' third motion in limine, **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART** the government's motion in limine, and **DENIES** plaintiffs' motion for leave to call rebuttal witness.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 9, 2024**
**Charleston, South Carolina**