## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| HARREY ANTHONY BROWN; and KESHA LYNETTE BROWN, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:21-cv-03801-DCN |
| vs. | ) ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

This matter is before the court on plaintiffs Harrey Anthony Brown ("Mr. Brown") and Kesha Lynette Brown's ("Mrs. Brown") (together, "plaintiffs") motion for reconsideration, ECF No. 226, and motion for an evidentiary hearing, ECF No. 229. For the reasons set forth below, the court denies both motions.

## I.  BACKGROUND

### A.  Factual Background

This case arises out of an allegedly failed medical procedure that Mr. Brown underwent in May 2019. According to plaintiffs, Mr. Brown was diagnosed with prostate cancer in December 2018, and in March 2019, he and his wife attended a comprehensive prostate cancer clinic at the Brooke Army Medical Center ("BAMC") Urology Clinic in Fort Sam Houston, Texas to discuss various treatment options. ECF No. 46, Amend. Compl. ¶¶ 12–13. Plaintiffs allege that they met with Dr. George Kallingal ("Dr. Kallingal"), a urology oncology surgeon at BAMC, who recommended that Mr. Brown

undergo a robotic-assisted laparoscopic radical prostatectomy. Id. ¶ 13. Defendants[1] dispute this account and claim that before meeting Dr. Kallingal, plaintiffs met with several other physicians. For example, defendants claim that on February 4, 2019, plaintiffs met with "Dr. Morales," who purportedly wrote in his visit notes that he had recommended "active surveillance" for Mr. Brown's "very low risk prostate cancer." ECF No. 75-5, Kallingal Decl. ¶ 11. Mr. Brown allegedly "still prefer[red] surgery," so Dr. Kallingal met Mr. Brown for the first time on March 27, 2019. Id. ¶¶ 11, 13. At the visit, Mr. Brown elected to undergo the robotic-assisted laparoscopic radical prostatectomy ("RALP"). Amend. Compl. ¶ 13.

Plaintiffs allege that Dr. Kallingal claimed to possess "extensive experience and skill with performing the complex surgical procedure." Id. Mr. Brown claims he consented to the surgery based on the understanding that Dr. Kallingal would serve as the primary surgeon "with no resident involvement." Id. Dr. Kallingal disputes this, claiming that he did not represent that he would perform the surgery alone and that he would not have done so because "[a] robotic assisted laparoscopic prostatectomy cannot be performed by one person." Kallingal Decl. ¶ 19.

According to plaintiffs, BAMC changed the "primary surgeon" from Dr. Kallingal to Dr. Grace Park ("Dr. Park"), a resident physician at BAMC. Amend. Compl. ¶ 13. Plaintiffs allege that Dr. Kallingal never obtained Mr. Brown's authorization for

---

[1] Plaintiffs initially brought this suit against the United States of America, Dr. Kallingal, Dr. Grace Park, the BAMC, and Dr. Alexander Ernest. See ECF No. 1, Compl. The court refers to these individuals collectively as "defendants" when explaining the background and procedural history of this case. However, the court notes that the United States of America is the only remaining defendant in this case. See ECF Nos. 72; 110.

Dr. Park to perform the procedure, and Dr. Kallingal instead falsified an informed consent form by forging Mr. Brown's signature.  Id.  Plaintiffs further allege that Dr. Park altered Mr. Brown's surgical dictation notes and fabricated a surgical counseling session to show that she had visited with him prior to the surgery.  Id.  Plaintiffs allege that, due to Dr. Park's lack of skill and experience, the procedure resulted in "severe post-operative complications," including "a life-threatening illness and physical injuries to [Mr. Brown's] body."  Id. ¶ 14.  Mr. Brown has been required to undergo additional medical procedures to treat the resulting injuries.  Id. ¶ 17.

Defendants dispute these claims.  Instead, defendants assert that Dr. Park was the Chief Resident and did not perform the surgery.  As Chief Resident, Dr. Park conducted a preoperative clearance visit with Mr. Brown.  ECF No. 75-6, Park Decl. ¶ 10.  On the day of the surgery, Dr. Park provided bedside assistance by positioning, prepping, and draping the patient.  Id. ¶ 13.  Dr. Kallingal was the attending surgeon who controlled the robot and performed the operation on Mr. Brown on May 9, 2019.  Kallingal Decl. ¶ 26.

### B.  Procedural History

On November 19, 2021, plaintiffs, proceeding pro se, filed a complaint against the United States of America (the "government"), Dr. Kallingal, and Dr. Park, as well as against BAMC and Dr. Alexander Ernest ("Dr. Ernest").  ECF No. 1.  Plaintiffs filed an amended complaint on September 12, 2022, alleging three separate causes of action for negligence based on medical battery and medical malpractice.  ECF No. 46, Amend. Compl.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Mary

3

Gordon Baker ("Judge Baker"). On September 12, 2022, Judge Baker recommended substituting the government as a party for BAMC and Dr. Ernest, ECF No. 45, and the court later adopted that recommendation and dismissed BAMC and Dr. Ernest from this action on February 10, 2023, ECF No. 72.

On November 15, 2022, plaintiffs filed a motion for summary judgment. ECF No. 61. On April 3, 2023, defendants filed a motion for summary judgment and motion for certification. ECF No. 75. Judge Baker issued a report and recommendation on June 14, 2023, in which she recommended that plaintiffs' motion for summary judgment be denied, that defendants' motion for certification be granted, and that defendants' motion for summary judgment be granted in part and denied in part. ECF No. 101, R&R. Notably, Judge Baker recommended granting defendants' motion for summary judgment on plaintiffs' medical battery claim because the evidence in the record showed that Mr. Brown signed a consent form prior to surgery, and there was no evidence in the record showing that Mr. Brown's signature was forged. Id. at 19–24. On September 5, 2023, the court adopted the R&R, denied plaintiffs' motion for summary judgment, ECF No. 61, and granted in part and denied in part defendants' motion for summary judgment, ECF No. 75. ECF No. 110 (the "Summary Judgment Order"). In that order, the court also dismissed Dr. Kallingal and Dr. Park and substituted the government in their place. Id. at 13.

On February 29, 2024, plaintiffs moved for the court to reconsider the Summary Judgment Order. ECF No. 136. Thereafter, on March 7, 2024, the government filed additional documents related to whether Mr. Brown consented to the RALP. ECF No. 143 (the "Supplemental Filing"). On March 25, 2024, the court granted plaintiffs'

4

motion to reconsider in part (the "Reconsideration Order"). ECF No. 148. The court found that there was now a genuine issue of material fact over whether Mr. Brown signed the RALP consent form, and the court revived plaintiffs' claim for medical battery based largely on the new documents contained in the government's Supplemental Filing. Id. at 26–30.

After the Reconsideration Order, plaintiffs unleashed a flurry of new filings. On March 25, 2024, plaintiffs moved for the court to (1) reconsider its failure to grant summary judgment in plaintiffs' favor and (2) exclude certain evidence related to the Supplemental Filing. ECF No. 152. While that motion was still pending, plaintiffs then filed another motion for the court to reconsider its denial of summary judgment, ECF No. 187, and a renewed motion for summary judgment, ECF No. 203. Plaintiffs also filed several additional evidentiary challenges, ECF Nos. 167; 169; 173; 184; 208, and the government filed its own motion in limine, ECF No. 192.

The court resolved all of the then pending motions in two separate orders. ECF Nos. 216; 219. On August 30, 2024, the court denied plaintiffs' various requests that the court reconsider granting summary judgment in their favor (the "August Order"). ECF No. 216. This included the portion of plaintiffs' March 25, 2024 motion, ECF No. 152, that acted as a motion to reconsider and plaintiffs' two subsequent motions seeking reconsideration, ECF Nos. 187; 203. ECF No. 216. However, in the August Order, the court deferred ruling on all of the pending evidentiary issues, including the remaining portions of plaintiffs' March 25, 2024 motion, for a future order. Id.

Thus, on September 9, 2024, the court ruled on the then pending evidentiary issues (the "September Order"). ECF No. 219. In relevant part, the court denied without

prejudice the portions of plaintiffs' March 25, 2024 motion acting as a motion in limine, ECF No. 152 (plaintiffs' "first motion in limine"); denied without prejudice plaintiffs' April 6, 2024 motion in limine, ECF No. 167 (plaintiffs' "second motion in limine"); denied plaintiffs' June 3, 2024 motion in limine, ECF No. 184 (plaintiffs' "third motion in limine"); granted in part and denied without prejudice in part the government's June 18, 2024 motion in limine, ECF No. 184; and denied plaintiffs' August 9, 2024 motion for leave to call rebuttal fact witness, ECF No. 208. ECF No. 219. The following day, the court held a status conference, during which plaintiffs expressed their dissatisfaction with the court's September Order. ECF No. 223. The court informed plaintiffs that, if they felt the court had made a mistake, they were welcome to file a motion for the court to reconsider the September Order. Id.

On September 30, 2024, plaintiffs moved for the court to reconsider its September Order. ECF Nos. 226; 227.[2] Plaintiffs then moved for an evidentiary hearing on October 8, 2024. ECF No. 229. On October 15, 2024, the government responded in opposition to plaintiffs' motion to reconsider. ECF Nos. 230; 231.[3] Plaintiffs replied to the government's response on October 22, 2024. ECF No. 233. The government also responded in opposition to plaintiffs' motion for an evidentiary hearing on October 22, 2024. ECF No. 235. Plaintiffs replied to this response on October 29, 2024. ECF No. 237. As such, both motions are now fully briefed and ripe for the court's review.[4]

---

[2] Plaintiffs filed their motion to reconsider as ECF No. 226 and separately filed supplemental documents in support of this motion as ECF No. 227 on the same day.

[3] The government filed its response as ECF No. 230 and separately filed a reply to plaintiffs' supplement as ECF No. 231. However, both of these filings appear to be identical.

[4] In addition to these two motions, plaintiffs also moved for leave to call a rebuttal fact witness on October 8, 2024, ECF No. 228, and for a new scheduling order on

## II.  STANDARD

### A.  Pro Se Litigants

Plaintiffs are proceeding pro se in this case.  Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys.  See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980).  Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

"Although the pleadings of pro se litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure."  Johnson v. Hendrick Auto. Grp., 2011 WL 6032706, at *3 (W.D.N.C. Dec. 5, 2011) (quoting In re Thomas, 2008 WL 112042, at *3 n.4 (W.D. Va. Jan. 9, 2008)), aff'd, 471 F. App'x 192 (4th Cir. 2012).  "[E]ven for pro se litigants, courts are not responsible for making basic evidentiary objections."  In re Pequeno, 126 F. App'x 158, 165 (5th Cir. 2005).  "While pro se litigants are afforded some latitude when it comes to technical procedural requirements, the Court expects them to follow the same rules of evidence and procedure as is required by those authorized to practice law."  El Bey v. Celebration Station, 2006

---

October 15, 2024, ECF No. 232.  However, plaintiffs moved to withdraw both of these motions on January 16, 2025, ECF No. 240, and the court granted plaintiffs' motion to withdraw on February 11, 2025, ECF No. 242.  Thus, plaintiffs' motion to reconsider, ECF No. 226, and motion for an evidentiary hearing, ECF No. 229, are the only two motions remaining before the court.

WL 2811497, at *2 (W.D.N.C. Sept. 28, 2006), aff'd, 242 F. App'x 917 (4th Cir. 2007).

That includes requiring pro se plaintiffs to establish the authenticity of any document

they put before the court.  Klabiner v. Rinaldi, 2001 WL 823529, at *6 (M.D.N.C. June

20, 2001), aff'd, 22 F. App'x 347 (4th Cir. 2002).

### B.  Motion in Limine

The purpose of a motion in limine is to obtain a preliminary ruling on the

admissibility of a particular evidentiary matter.  Luce v. United States, 469 U.S. 38, 40

n.2 (1984).  A court will exclude evidence on a motion in limine only if the evidence is

"clearly inadmissible for any purpose."  Hall v. Sterling Park Dist., 2012 WL 1050302, at

*2 (N.D. Ill. Mar. 28, 2012).  Courts routinely defer ruling on motions in limine until the

court has more information on the disputed evidentiary matter.  Finch v. Covil Corp., 388

F. Supp. 3d 593, 612 n.14 (M.D.N.C. 2019) (collecting cases), aff'd 972 F.3d 507 (4th

Cir. 2020).

### C.  Motion to Reconsider

Plaintiffs indicate that they bring their motion to reconsider pursuant to Rule 59(e)

of the South Carolina Rules of Civil Procedure.  ECF No. 226 at 1.  However, because

plaintiffs seek reconsideration of the court's order on an interlocutory matter, and

because this case is pending in federal court, the court construes plaintiffs' motion as if it

were brought pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  See Fed. R.

Civ. P. 54(b); Bratcher v. Clarke, 725 F. App'x 203, 205 n.1 (4th Cir. 2018); Wright v.

Cent. States, Se. & Sw. Areas, Health & Welfare Fund, 440 F. Supp. 1235, 1236 (D.S.C.

1977).

"Compared to motions to reconsider <u>final</u> judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise <u>interlocutory</u> orders before final judgment as the litigation develops and new facts or arguments come to light." <u>Carlson v. Boston Scientific Corp.</u>, 856 F.3d 320, 325 (4th Cir. 2017). "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 515 (4th Cir. 2003).

"[W]hile Rule 54(b) 'gives a district court discretion to revisit earlier rulings in the same case,' such discretion is 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" <u>U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC</u>, 899 F.3d 236, 257 (4th Cir. 2018) (quoting <u>Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP</u>, 322 F.3d 147, 167 (2d Cir. 2003)); <u>accord</u> <u>South Carolina v. United States</u>, 232 F. Supp. 3d 785, 793 (D.S.C. 2017) ("[A] motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome."). "Nor should such a motion be used to raise new arguments or evidence that could have been raised previously." <u>South Carolina v. United States</u>, 232 F. Supp. 3d at 793.

"Thus, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing

'manifest injustice.'"[5]  Carlson, 956 F.3d at 325 (alteration in original) (quoting Canoe

Ass'n, 326 F.3d at 515).  "[A] prior decision does not qualify for th[e] third exception by

being just maybe or probably wrong; it must strike [the court] as wrong with the force of

a five-week-old, unrefrigerated dead fish.  It must be dead wrong."  U.S. Tobacco Coop.,

899 F.3d at 258 (quoting TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009)).

### III.  DISCUSSION

Before delving into plaintiffs' pending motions, the court briefly pauses to

comment on how these two motions fit into the procedural posture of this case.  Though

plaintiffs ostensively bring these two motions to address evidentiary concerns, most of

their arguments focus on why the court should grant summary judgment in their favor—

in other words, plaintiffs' pending motions act as thinly veiled attempts to convince the

court to re-reconsider their motion for summary judgment.  Indeed, plaintiffs describe the

summary judgment standard in both of their pending motions even though those motions

are purportedly focused on evidentiary matters.  See ECF Nos. 226 at 22–23; 229 at 22–

23.  Moreover, plaintiffs specifically argue that the court should grant their motion for an

evidentiary hearing "and will find that clear errors were made in denying the Plaintiffs'

MSJ."  ECF No. 229 at 23.

As is evident from the complicated and overly confusing procedural history

outlined above, and as the court specifically observed in its August Order, plaintiffs have

made these same arguments on several occasions, and the court has already fully

---

[5] "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'"  Carlson, 856 F.3d at 325 (quoting Pac. Ins. Co. v. Am. Nat. Faire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)).

considered, reconsidered, and resolved these issues. In the August Order, the court explained that no litigant has a right to make serial summary judgment motions, and the court warned that it may summarily dispose of any such motion in the future. ECF No. 216 at 7–8 nn.3–4. Thus, while the court understands that plaintiffs disagree with some of its prior decisions, the court rejects the arguments that plaintiffs now make in favor of summary judgment for the same reasons the court rejected these same arguments in its prior orders. See generally ECF Nos. 148; 216; see also, e.g., White v. Date Trucking, LLC, 2018 WL 11469493, at *1 (D. Md. July 20, 2018) ("Whether or not to entertain successive motions for summary judgment is within a district court's discretion."); Wootten v. Commonwealth of Va., 2016 WL 4742336, at *3–4 (W.D. Va. Sept. 12, 2016) (denying a party's motion for partial summary judgment when the party had previously filed several motions for summary judgment or motions functionally seeking summary judgment). With that said, the court proceeds to consider the remaining arguments in plaintiffs' latest motions.

### A. Motion to Reconsider

Liberally construed, plaintiffs' motion to reconsider is premised on their assertion that the court committed clear error in the September Order because the court misapprehended their arguments. See ECF Nos. 226 at 2–3; 233 at 12–13. Just as it did in the September Order, the court will take each of the evidentiary motions in turn.[6]

---

[6] In addition to the motions discussed in this order, the court's September Order also addressed a motion plaintiffs made on May 7, 2024, ECF Nos. 169. ECF No. 219 at 21–23. As the court explained in its September Order, plaintiffs styled their May 7, 2024 motion as a motion in limine, but the motion functionally operated as a motion to strike under Rule 12(f). Id. Consequently, the court denied this motion as an untimely motion to strike. Id. Plaintiffs do not appear to object to the court's disposition of their motion to strike in their latest motion to reconsider.

11

### 1. **Plaintiffs' First Motion in Limine**

To reiterate, plaintiffs' March 25, 2024 motion was, in fact, two motions, but it was difficult to tell where plaintiffs' motion to reconsider ended and where their first motion in limine began. ECF No. 152. In any event, the court denied the portions of the motion requesting that the court reconsider its previous denial of plaintiffs' motion for summary judgment in its August Order, ECF No. 216, and the court denied the portions of the motion acting as plaintiffs' first motion in limine in its September Order, ECF No. 219 at 10–16.

In short, plaintiffs argued in their first motion in limine that the court should prevent the government from introducing (1) the Supplemental Filing, (2) Dr. Kallingal's declarations, (3) Dr. Gillcrist's declaration, (4) Dr. Park's declaration, or anything else referencing this evidence at trial. ECF No. 152 at 1–2. In response, the government argued that, while the documents contained in the Supplemental Filing are relevant and admissible, it does not plan to introduce the Supplemental Filing itself at trial, nor does it plan on introducing Dr. Kallingal's declarations, Dr. Park's declaration, or Dr. Gillcrist's declaration. ECF No. 156 at 6–7. Based on the government's assurances that it did not plan on introducing this evidence at trial, the court denied plaintiffs' first motion in limine as moot. ECF No. 219 at 16. To the extent plaintiffs objected to any of the records contained in the Supplemental Filings or to the live testimony of Drs. Kallingal, Park, or Gillcrist being introduced at trial, the court explained that plaintiffs may object at that time. Id.

In their most recent motion to reconsider, plaintiffs argue that the court erred in its September Order. ECF No. 226 at 1. However, rather than presenting any argument on

why their motion in limine was not moot, plaintiffs focus their new argument on why the court should reconsider its denial of plaintiffs' motion for summary judgment. See ECF No. 226 at 1, 25–41; see also ECF No. 227 at 2 ("Additionally, the clear and convincing evidence now before this Court confirms that on March 7, 2024, the Government provided a fatally flawed Defendants' Supplemental Filing that indisputably and undoubtedly proved the Plaintiffs are now entitled to a favorable summary judgment ruling or at the very least have irrefutably proven their medical battery claim."). In other words, plaintiffs appear to direct this motion at the court's August Order on their prior motion to reconsider—not the court's September Order on their first motion in limine.[7]

Either way, the court denies plaintiffs' motion. To the extent the motion challenges the court's August Order, the motion is denied because the court has already determined that there is a genuine issue of material fact for trial, and the court is not going to entertain successive summary judgment motions on arguments that it has already considered, reconsidered, and rejected. See, e.g., White, 2018 WL 11469493, at *1; Wootten, 2016 WL 4742336, at *3–4. To the extent the motion challenges the court's September Order, the motion is denied because plaintiffs' have not pointed to any defect in the court's reasoning, much less clear error. See U.S. Tobacco Coop., 899 F.3d at 258.

### 2. Plaintiffs' Second Motion in Limine

In their second motion in limine, plaintiffs argued that the court should exclude the testimony of Jeffrey Taylor ("Taylor"), the government's forensic document

---

[7] Plaintiffs argue throughout their motion to reconsider that, in the September Order, the court did not address arguments they made in their March 25, 2024 motion for reconsideration and at a June 4, 2024 status conference. E.g., ECF No. 226 at 25. As stated above, the court considered plaintiffs' arguments for reconsideration of summary judgment in its August Order and directs plaintiffs there. See generally ECF No. 216.

examiner ("FDE"). ECF No. 167. In his expert report, Taylor was ultimately unable to determine whether the signature on the RALP consent form was truly that of Mr. Brown. See ECF No. 174-1 at 1. Plaintiffs noted that the government was offering Taylor to rebut the testimony of plaintiffs' FDE, Patricia Hale ("Hale"), who concluded that Mr. Brown's signature on the RALP consent from was forged. ECF No. 176 at 12–13. Because Taylor did not mention, reference, or directly refute Hale's testimony in his report, plaintiffs argued that Taylor's testimony would be irrelevant and would not help the trier of fact and that Taylor could not be considered a rebuttal expert witness. Id. at 9–14, 23–24; ECF No. 167 at 3.

The court denied plaintiffs' motion without prejudice. While the court agreed that this was a close call, the court found that Taylor's testimony could still be relevant to help determine if Mr. Brown's signature on the RALP consent from was forged. ECF No. 219 at 20–21. Ultimately, the court determined that it was going to be better able to determine the relevancy of Taylor's testimony at trial. Id. Therefore, the court denied plaintiffs' second motion in limine without prejudice but noted that plaintiffs were free to renew their objections at trial. Id.; see also ECF No. 233 at 19.

In their latest motion to reconsider, plaintiffs maintain that the government cannot offer Taylor as a rebuttal witness because his conclusions do not directly refute Hale's conclusions. ECF No. 226 at 41–46. The court denies this portion of plaintiffs' motion to reconsider because plaintiffs do not point to any error, much less clear error, in the court's reasoning. See U.S. Tobacco Coop., 899 F.3d at 258.

### 3.  Plaintiffs' Third Motion in Limine

In plaintiffs' third motion in limine, they argued that eight of the government's witnesses cannot testify because their testimony will contradict other evidence in the record, such as some of the documents contained in the Supplemental Filing.  ECF No. 184 at 10–13.  Plaintiffs also asserted that the government's witnesses' testimony was unnecessary because the court should grant summary judgment in plaintiffs' favor.  Id. at 13.

In its September Order, the court reiterated that "there are triable issues of fact in this case, and the Supplemental Filing did not obviate the need for a trial."  ECF No. 219 at 25.  Thus, to the extent plaintiffs argued that it was unnecessary for the government to call these witnesses because there were not triable issues of fact, the court denied the motion.  Id. at 26.  The court further noted that, if plaintiffs believed the testimony of these witnesses was irrelevant or inconsistent with the other evidence, plaintiffs would have an opportunity to object and cross-examine these witnesses at trial.[8]  ECF No. 219 at 26.

---

[8] Plaintiffs' third motion in limine was also based, in part, on the government's failure to disclose three witnesses in a timely manner.  ECF No. 184 at 15–17.  In the September Order, the court determined that the government no longer plans to call one of these witnesses at trial and that the Southern States factors weighed in favor of permitting the government to call the other two—Dr. Matthew Van Dam ("Dr. Van Dam") and Capt. David Nicholson ("Capt. Nicholson")—at trial.  ECF No. 219 at 26–29 (citing S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592 (4th Cir. 2003)).  In their latest motion to reconsider, plaintiffs include a caption for "Previously Undisclosed Witnesses."  ECF No. 226 at 49.  However, rather than arguing that the court erred in its application of the Southern States factors, plaintiffs argue that the court should prevent Dr. Van Dam or Capt. Nicholson from testifying because their testimony will be inconsistent, contradictory, and not helpful for the trier of fact, primarily because plaintiffs believe their testimony will contradict other evidence.  Id. at 49–54.  Therefore, plaintiffs have not pointed to an error in the court's September Order related to its application of the Southern States factors.  Like the other witnesses discussed above, if

In their latest motion to reconsider, plaintiffs reiterate that eight of the government's witnesses must be excluded and cannot be considered reliable "because their testimony is contradicted by the Supplemental Filing." ECF No. 226 at 48; see also id. at 48–54. They then argue, again, that the court should grant summary judgment in their favor.[9] Id. at 48–49. Once more, if plaintiffs believe the government's witnesses' testimony is contradicted by other evidence in the record, they can raise these issues during cross-examination at trial. Therefore, plaintiffs' motion for the court to reconsider their third motion in limine is denied.

### 4. The Government's Motion in Limine

The government argued in its motion in limine that the plaintiffs should not be permitted to (1) call Barbara Bowens ("Ms. Bowens") as a witness, (2) introduce the results of Mr. Brown's polygraph examination into evidence, (3) introduce Mr. Brown's medical records that are not from the BAMC into evidence, or (4) introduce any expert report into evidence at trial if the expert is not testifying. ECF No. 192 at 1.

Because plaintiffs indicated that they do not intend to introduce Mr. Brown's medical records that are not from the BAMC or any expert report from an expert who is not testifying into evidence, the court denied these portions of the government's motion without prejudice. ECF No. 219 at 35–36. However, the court also granted the motion in

---

plaintiffs still feel that Dr. Van Dam's or Capt. Nicholson's testimony is irrelevant or inconsistent with other evidence, plaintiffs are free to raise these issues at trial in objections or during cross-examination.

[9] The government reads plaintiffs' latest motion to reconsider as asserting an argument based on lack of informed consent, which the government argues is a separate claim from medical battery under Texas law. ECF No. 230 at 7–8. In their reply and at a January 27, 2025 status conference, plaintiffs made clear that they are pursuing a medical battery claim and not a claim based on lack of informed consent. See ECF Nos. 233 at 6, 17–18; 241.

part.  The court found that Ms. Bowens—a former Assistant United States Attorney who previously represented in the government in this case—was not likely to have relevant information on plaintiffs' medical battery claim, so the court precluded her from testifying.  Id. at 29–33.  The court also found that the statements Mr. Brown made during his polygraph examination were inadmissible hearsay.  Id. at 33–35.  The court further noted that, even if the statements during the examination were not hearsay, they would still be inadmissible because polygraph results are generally inadmissible and plaintiffs do not plan to call a witness to authenticate the polygraph results.  ECF No. 219 at 35 n.11.

In their latest motion to reconsider, plaintiffs do not appear to directly argue that the court erred in excluding Ms. Bowens's testimony, but plaintiffs state that the court "previously ruled [Ms. Bowens] who is primarily responsible for the evidence before the court today being meaningfully different from the evidence before the court on the motions for summary judgment would be allowed to testify as a lay witness at trial." ECF No. 226 at 3–4.  Plaintiffs provide no citation for this assertion, and it is simply untrue; the court never ruled that Ms. Bowens could testify in this case.  Because plaintiffs have failed to point to any error in the court's reasoning on the admissibility of Ms. Bowens's testimony, this portion of plaintiffs' motion to reconsider is denied.  See U.S. Tobacco Coop., 899 F.3d at 258.

Plaintiffs do argue that the court erred when it excluded Mr. Brown's polygraph results and the statements he made during that examination.  ECF No. 226 at 54–55. Plaintiffs explained in their response to the government's motion that they sought to

17

admit the polygraph results because those test results indicate that the following

statement from Mr. Brown is true:

> I Harrey A. Brown in conjunction with my polygraph here today I am here to prove the following statement is truthful. I never spoke with Dr. Park until the morning of my surgery, [sic] The morning of the surgery the only thing Dr. Park spoke to me about was the consent form for Dr. Kallingal to perform the surgery as agreed upon on March 27, 2019.

ECF No. 196 at 17. The court found that this statement was hearsay because it "was not

made while [Mr. Brown] was testifying, and plaintiffs overtly offer the statement to

prove the truth of the matter contained therein—i.e., that Mr. Brown did not speak to Dr.

Park the morning of his surgery." ECF No. 219 at 34.

In their motion to reconsider, plaintiffs state that "the statement Mr. Brown made

during the polygraph examination was offered to prove the truth of the matter contained

therein—i.e., that Mr. Brown did speak to Dr. Park the morning of his surgery." ECF

No. 226 at 55. The court agrees that, in contrast to what it stated in its September Order,

plaintiffs offer the statement to prove that Mr. Brown did speak to Dr. Park the morning

of his surgery.[10] See ECF No. 196 at 17. Nevertheless, this distinction is immaterial;

either way, plaintiffs offer the statement to prove the truth of the matter asserted—the

definition of hearsay—which is why the court excluded the statement. See Fed. R. Evid.

802; ECF No. 219 at 34–35.

Plaintiffs now argue, for the first time, that the statement made during the

polygraph examination meets the hearsay exception for statements made for medical

diagnosis or treatment in Federal Rule of Evidence 803(4). ECF No. 226 at 55. The

court, however, finds that the statement does not qualify for the exception in Rule 803(4).

---

[10] The court should have said that plaintiffs seek to prove that Mr. Brown did not speak to Dr. Park until the morning of his surgery.

There is a two-part test for determining if a statement qualifies for the hearsay exception for a statement made for purposes of medical diagnosis or treatment: "(1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." Willingham v. Crooke, 412 F.3d 553, 562 (4th Cir. 2005) (quoting Morgan v. Foretich, 846 F.2d 941, 949 (4th Cir. 1988)). Mr. Brown made this statement during his polygraph examination, presumably to a polygraph examiner rather than a medical professional, and not while seeking medical treatment. The statement therefore does not qualify for this exception.

Beyond that, plaintiffs have neither addressed the court's concern that polygraph examination results are generally inadmissible nor have they offered a witness to authenticate the polygraph examination. Therefore, the court denies plaintiffs' motion to reconsider. As the court explained in its September Order, "[i]f Mr. Brown wishes to testify under oath at trial about whether he spoke to Dr. Park on the day of his surgery, he is welcome to do so." ECF No. 219 at 35.

### 5. Plaintiffs Motion for Leave to Call Rebuttal Fact Witness

In the final motion that the court considered in its September Order, plaintiffs sought leave to call Judge Baker as a rebuttal fact witness. ECF No. 208 at 1. As the court explained, "a judge enjoys no special privilege from being subpoenaed as a witness, [but] it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony." ECF No. 219 at 38 (quoting United States v. Dowdy, 440 F. Supp. 894, 896 (W.D. Va. 1977)). The court ultimately denied plaintiffs' motion because Magistrate Judge Baker's testimony would

have no tendency to make any fact relevant to plaintiffs' claims "more or less probable." Id. at 38 (quoting Fed. R. Evid. 401(a)). In other words, the court found that Judge Baker's testimony would be irrelevant and inadmissible. Id.

In their latest motion to reconsider, plaintiffs state that the court's decision that Judge Baker cannot testify "is traumatizing and dishearteningly inconsistent and contradictory" and "is clearly another legal error as this Court again failed to consider each factor of the Plaintiffs Motions simply because they were lengthy." ECF No. 226 at 32. However, plaintiffs neither point to any portion of their motion for leave to call Judge Baker that the court did not consider, nor do they point to any error in the court's reasoning.[11] In its September Order, the court fully considered and rejected plaintiffs' arguments, and the court denies this portion of plaintiffs' motion to reconsider.

### B. Motion for an Evidentiary Hearing

In their motion for an evidentiary hearing, plaintiffs argue, to no surprise, that the court should grant summary judgment in their favor. ECF No. 229 at 23. Much like in their various previous motions, plaintiffs insist that the RALP consent form is invalid and forged, and plaintiffs state that an evidentiary hearing is necessary to determine if the RALP consent form is consistent with the testimony that will be offered by the government's various witnesses. Id. Plaintiffs reason that, if the government is going to rely on the RALP consent form, "Plaintiffs are entitled to test that defense in an evidentiary hearing, and to establish a record for review by the trier of fact as a matter of

---

[11] Perhaps plaintiffs are arguing the court did not consider the arguments they made in their motion for leave to call Judge Baker on why the court should grant summary judgment in plaintiffs' favor. See ECF No. 208 at 15. If that is the case, the court rejected those arguments for the same reasons it rejected the same arguments in plaintiffs' other motions. See generally ECF No. 216.

law." Id. at 24.  In their reply, plaintiffs further explain the RALP Consent Form

contradicts the government's evidence, and plaintiffs wish to have the evidentiary hearing

to present evidence and legal arguments so that the court can make a determination

resolving this conflict.  ECF No. 237 at 3; see also id. at 9 (arguing that arguments made

during a June 4, 2024 status conference show that the RALP consent form will contradict

the government's evidence).

The court agrees with plaintiffs that it is necessary for the trier of fact to review

the evidence to determine the validity of both parties' claims and defenses.  However, the

proper forum for such an inquiry is not an evidentiary hearing; it is a trial.  The trial in

this case is scheduled to start on June 17, 2025.  ECF No. 243.  Plaintiffs will have an

opportunity to present their evidence and challenge the government's evidence in front of

the trier of fact at that time.  Plaintiffs' motion for an evidentiary hearing is denied.[12]

---

[12] In addition to an evidentiary hearing being unnecessary, plaintiffs have not pointed to any authority suggesting that such a hearing would be procedurally appropriate.  In their motion, plaintiffs cite Mathews v. Eldridge, 424 U.S. 319 (1976) and Goldberg v. Kelly, 397 U.S. 254 (1970) and to "§ 78.14 Evidentiary Hearing Procedure," which appears to be an Environmental Protection Agency ("EPA") regulation governing evidentiary hearings in front of that agency.  See ECF No. 229 at 19–21.  In their reply, plaintiffs concede that Mathews and Goldberg are not applicable to this case, ECF No. 236 at 10, and the court finds that it is not the EPA.  Plaintiffs cite in their reply to Federal Rules of Evidence 401, 402, and 403, and appear to reference the California Supreme Court's decision in Elkins v. Superior Court, 163 P.3d 160 (Cal. 2007).  ECF No. 237 at 10–11.  They argue that an evidentiary hearing is necessary "[i]n the interest of procedural fairness and to get the outcome of this complexed [sic] case right."  ECF No. 237 at 11–12.  Plaintiffs will have an opportunity to do just that at trial, making an evidentiary hearing unnecessary, and the authorities plaintiffs cite do not support their contention that an evidentiary hearing is procedurally appropriate in this case.  See Elkins, 163 P.3d 160 (discussing the validity of a trial court's local rule and scheduling order under California law); Fed. R. Evid. 401; 402; 403.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiffs' motion to reconsider and **DENIES** plaintiffs' motion for an evidentiary hearing.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 27, 2025**
**Charleston, South Carolina**