**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| HARREY ANTHONY BROWN and KESHA LYNETTE BROWN,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 2:21-cv-03801-DCN<br><br>**ORDER** |

The following matters are before the court on plaintiffs Harrey Anthony Brown ("Mr. Brown") and Kesha Lynette Brown's ("Mrs. Brown") (together, with Mr. Brown, "Plaintiffs") motion for leave to submit an economic damages disclosure, ECF No. 297; motion and amended motion to clarify whether any potential recovery is subject to certain damages caps, ECF Nos. 298, 302; motion for leave to file an amended complaint, ECF No. 309; motion for summary judgment, ECF No. 316; motion for sanctions, ECF No. 325; and motion to reopen discovery and to compel production of documents, ECF No. 330. Also before the court is the United States of America's (the "Government") motion for leave to identify a new expert, ECF No. 287. For the reasons set forth below, the court grants the Government's motion; grants in part and denies in part Plaintiffs' motion for leave to submit an economic damages disclosure; issues the requested clarification as to damages caps; and denies Plaintiffs' motion for leave to file an amended complaint, motion for summary judgment, motion for sanctions, and motion to reopen discovery and compel production of documents.

## I. BACKGROUND

This protracted litigation arises from a failed medical procedure that Mr. Brown underwent in May of 2019. Mr. Brown was diagnosed with prostate cancer in December of 2018, and he went to the Brooke Army Medical Center ("BAMC") in March of 2019 to receive treatment. At BAMC, Mr. Brown met with Dr. George J. Kallingal ("Dr. Kallingal") and elected to undergo a robotic-assisted laparoscopic prostatectomy ("RALP"). Mr. Brown claims that he consented to the surgery on the understanding that Dr. Kallingal would operate without any resident involvement. ECF No. 46, Amend. Compl. ¶ 13. Dr. Kallingal disputes this, claiming he made no such representation, as a RALP "cannot be performed by one person." ECF No. 75-5 ¶ 19.

Plaintiffs allege that, despite the purported understanding between Mr. Brown and Dr. Kallingal, BAMC changed the "primary surgeon" to Dr. Grace E. Park ("Dr. Park"), a resident physician at BAMC. Amend. Compl. ¶ 13. Plaintiffs claim that this change was made without Mr. Brown's consent and that Dr. Kallingal forged Mr. Brown's signature on an informed consent form. Id. Plaintiffs allege that due to Dr. Park's lack of skill and experience, Mr. Brown has suffered "severe post-operative complications," including "a life-threatening illness and physical injuries to [Mr. Brown's] body." Id. ¶ 14. Mr. Brown has undergone additional medical procedures to treat the resulting injuries. Id. ¶¶ 12–13.

On November 19, 2021, Plaintiffs, proceeding pro se, filed a complaint against Dr. Kallingal, and Dr. Park, as well as against BAMC, the Army, and Dr. Alexander Ernest. ECF No. 1. Plaintiffs filed an amended complaint on September 12, 2022,

naming the same defendants and alleging three separate causes of action for medical malpractice, medical battery, and loss of consortium. Amend. Compl. In an order issued on February 10, 2023, the court dismissed all defendants named in the amended complaint and substituted the United States in their place. ECF No. 72. The Government is thus the only remaining defendant in this suit. See id. This case has been ripe for trial since the court granted Plaintiffs' motion to reconsider its prior order granting summary judgment in the Government's favor on March 25, 2024. See ECF No. 148. Complications arising from Mr. Brown's medical condition, a failed mediation, and a flurry of recent motions, among other difficulties, have resulted in significant delay.

The following motions are pending before the court. First, the Government filed a motion for leave to identify a new expert on September 18, 2025. ECF No. 287. Plaintiffs filed no response.[1]

Second, Plaintiffs filed a motion for leave to submit an economic damages disclosure on December 22, 2025. ECF No. 297. The Government responded in opposition on January 12, 2026, ECF No. 304, and Plaintiffs replied on February 4, 2026. ECF No. 311.

Third, Plaintiffs moved to clarify whether any potential recovery was subject to certain damages caps on December 22, 2025, ECF No. 298, and shortly thereafter, on December 29, 2025, Plaintiffs filed an amended motion to clarify, ECF No. 302. The Government responded on January 12, 2026, ECF No. 305, and Plaintiffs replied on January 26, 2026, ECF No. 310.

---

[1] The Government filed this motion because its previously designated handwriting expert passed away. ECF No. 287 at 1. As no opposition was filed to the motion, the court grants the motion. See id.

Fourth, Plaintiffs moved for leave to file an amended complaint on January 22, 2026. ECF No. 309. The Government responded on February 5, 2026, ECF No. 312, and Plaintiffs replied on February 11, 2026, ECF No. 313.

Fifth, Plaintiffs moved for summary judgment on March 27, 2026. ECF No. 316. The Government responded on April 8, 2026. ECF No. 319.

Sixth, Plaintiffs moved for sanctions on May 7, 2026. ECF No. 325. The Government responded on May 19, 2026, ECF No. 327, and Plaintiffs filed a reply on May 22, 2026, ECF No. 328.

Seventh, Plaintiffs moved to "reopen discovery and to compel production of documents" on July 10, 2026. ECF No. 330. The Government responded on July 24, 2026, ECF No. 331, to which Plaintiffs replied on July 28, 2026, ECF No. 332. The court held a hearing on the pending motions on August 21, 2026. ECF No. 333. As such, all pending motions are fully briefed and now ripe for the court's review.

## II. STANDARD[2]

Plaintiffs are proceeding pro se in this case. Pro se complaints and petitions should be construed liberally and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970, 99 (1978). Liberal construction of complaints or petitions filed by a pro se litigants is intended to permit the development of a meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not permit the court to ignore a pro se litigant's failure to make meritorious arguments. See Weller v. Dep't of

---

[2] The standards of review applicable to individual motions are provided in the discussion section of this order.

Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990); see also Johnson v. Hendrick Auto. Grp., 2011 WL 6032706, at *3 (W.D.N.C. Dec. 5, 2011) ("Although the pleadings of pro se litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure.").

## III. DISCUSSION

### A. Motion for Leave to Submit Economic Damages Disclosure

Plaintiffs moved for leave to file an economic damages disclosure on December 22, 2025. ECF No. 297. They argue the proposed disclosure "clarif[ies] the final amount of lost wages, future lost wages, and medical expenses claimed and are essential for an accurate calculation of economic damages." ECF No. 297 at 1. They further claim the "omission" of this information up to this point "was not intentional but was due to a reasonable mistake or error[ ] and constitutes excusable neglect under . . . Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure." Id.

The most recent scheduling order issued in this case required discovery to be completed no later than March 3, 2023. ECF No. 65 (2d Amend. Sched. Order). Because this deadline has long since passed, an amendment to the scheduling order would be necessary to grant Plaintiffs' request. For that reason, the Government analyzes the instant motion under Federal Rule of Civil Procedure 16(b)(4)'s "good cause" standard. ECF No. 304 at 2; see also Fed. R. Civ. P. 16(b)(4).

Because an amendment to the scheduling order would be required to grant the relief requested, the court will apply Rule 16(b)(4)'s good cause standard to Plaintiffs' motion for leave to file an economic disclosure. See Eichin v. Ethicon Endo-Surgery, LLC, 173 F.4th 124, 126–27 (4th Cir. 2026) (concluding that when a party seeks to

modify a scheduling order "Rule 16(b)(4)'s good cause standard must be satisfied."); see also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause . . . .") (emphasis added).

### 1. Standard

Rule 16(b)(4)'s good cause standard "focuses on the timeliness of the amendment and the reason for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cnty., 182 F. App'x 156, 162 (4th Cir. 2006); see RFT Mgmt. Co., LLC v. Powell, 607 F. App'x 238, 242 (4th Cir. 2015). "In seeking leave to amend, the 'movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order.' " Thomason v. Toyota Motor Eng'g & Mfg. N. Am., Inc., 2017 WL 10901214, at *6 (D.S.C. Mar. 6, 2017) (citing United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007)). "Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.' " Rassoull v. Maximus, Inc., 209 F.R.D. 372, 374 (D. Md. 2002) (quoting W. Va. Housing Dev. Fund v. Ocwen Techn. Xchange, Inc., 200 F.R.D. 564, 567 (S.D.W. Va. 2001)). If the moving party "was not diligent, the inquiry should end." Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) (citation omitted) (emphasis in original).

### 2. Discussion

Plaintiffs proposed disclosure provides damages computations for past lost wages from 2022 through 2025, future lost wages, and lost future retirement income. The proposed disclosure also provides a computation of medical expenses based on medical bills from 2022 through 2025.

The Government argues that although Plaintiffs claim their failure to disclose was unintentional and resulted from a reasonable mistake, Plaintiffs make no attempt to explain why this is so. ECF No. 304 at 1. The Government also reminds the court that this case has been prepared for trial since June of 2024, and that while the court has continued this case to allow for mediation, that does not justify re-opening discovery. Id. at 4. The Government claims that reopening discovery will be prejudicial "because it will not have the opportunity to conduct its own discovery regarding Plaintiffs' new evidence of economic damages." Id.

Plaintiffs argue that "[c]orrective surgical procedures that occurred multiple times each year of this four-year litigation were unforeseen complications that arose post-cutoff, rather than mere oversight by Plaintiffs." Id. at 15. The court partially agrees with this position. With respect to damages incurred in 2025, Plaintiffs could not have disclosed those damages prior to the scheduling order's discovery deadline, and they have been diligent in seeking to disclose those damages before the end of that same year. As such, the court will grant in part Plaintiffs' motion for leave but only to allow for the disclosure of damages incurred in the year 2025—whether for medical bills or lost wages.[3] ECF No. 297-2 at 7–8, 11–30. However, with respect to lost wages for the year 2022; lost future retirement income; future lost wages; and medical expenses incurred in 2023 but prior to the discovery deadline, the court will not permit these damages figures to be disclosed, as these damages were either sustained or capable of calculation prior to the close of discovery. Id. at 5–9, 11–30. As for lost wages from the years 2023 through

[3] Should Mr. Brown have incurred any medical expenses in the year 2026, the court will grant leave to disclose those damages as well.

2024, medical expenses incurred in 2023 but after the discovery deadline, and medical expenses incurred in 2024, Plaintiffs have waited at least one year before moving to disclose those damages even though they were sustained after the discovery deadline. In either case, such a delay indicates a lack of diligence, and Plaintiffs make no effort to explain how they have acted diligently notwithstanding that delay. See ECF Nos. 297-1, 304; Fed. R. Civ. P. 26(a)(1)(A)(iii) (making a "computation of each category of damages as claimed by the disclosing party" a required initial disclosure); Fed. R. Civ. P. 26(a)(1)(C) (requiring initial disclosures to be made within "14 days after the parties' rule 26(f) conference[.]"); Fed. R. Civ. P. 26(e)(1)(A) (requiring a "party who has made a disclosure under Rule 26(a)" to "supplement . . . its disclosure[ ] . . . in a timely manner if the party learns that in some material respect disclosure or response is incomplete or incorrect[.]"); Eichin, 173 F.3d at 127 (affirming denial of motion to extend discovery deadline when movant failed to show "that the schedule could not be met despite the diligence of [the movant]."); see also Johnson, 2011 WL 6032706, at *3 ("Although the pleadings of pro se litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure."). The court also emphasizes that Plaintiffs, having largely declined to participate in discovery during the period provided for in the court's scheduling order, cannot have discovery re-opened to disclose materials that could have been submitted during that period.

**B. Motion for Leave to File an Amended Complaint**

The court next considers Plaintiffs' motion for leave to file an amended complaint. Because the scheduling order's deadline for motions to amend pleadings has passed, Rule 16(b)(4)'s "good cause" standard applies to this motion as well. See ECF

No. 65; Fed. R. Civ. P. 16(b)(4). To prevail, Plaintiffs must also show, pursuant to Rule 15(a)(2), that "justice so requires[ ]" granting leave to amend. Fed. R. Civ. P. 15(a)(2).

Plaintiffs' operative complaint asserts three claims: (1) medical malpractice, (2) medical battery, and (3) loss of consortium. See Amend. Compl. Plaintiffs now seek to "add a claim of healthcare fraud[.]" ECF No. 309 at 1. The proposed complaint—broadly construed—can be read to assert the generalized claim of "healthcare fraud" as one of three different substantive causes of action: a qui tam claim pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733; a Section 1983 claim pursuant to 42 U.S.C. § 1983; or Bivens claim pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics, 403 U.S. 388 (1971). The Government argues that it would be futile for Plaintiffs to assert any of these three substantive causes of action. See ECF No. 312. The court agrees.

**1. Standard**

Although the disposition of a motion to amend is within the sound discretion of the district court, leave to amend should be denied where "the proposed amendment would be futile." See United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). An amendment to a pleading is futile when it "fails to state a claim under the applicable rules and accompanying standards[.]" Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). "Leave to amend . . . should only be denied when the proposed amendment is clearly insufficient . . . on its face." Foster v. Wintergreen Real Est. Co., 363 F. Appx. 269, 276 (4th Cir. 2010) (alterations in original) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986)); see also Bilbro v. Haley, 229 F. Supp. 3d 397, 404 (D.S.C. 2017) ("[D]istrict court's denial of

leave to amend is appropriate when . . . the amendment would have been futile." (quoting Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014))).

**2. Discussion**

First, the court agrees with the Government that a pro se litigant cannot bring a claim under the FCA. See Wojcicki v. SCANA/SCE&G, 947 F.3d 240, 243–46 (4th Cir. 2020) ("[W]e readily conclude that [plaintiff] cannot bring a pro se FCA qui tam action.").

Second, the Government is correct that Plaintiffs cannot pursue a claim under Section 1983 because the Government is the only party to this suit and, "[b]y its terms, § 1983 'does not and cannot apply to the action of the federal Government.' " Ford Family v. U.S. Dep't of Def., 2021 WL 7082645, at *2 (E.D.N.C. Dec. 21, 2021) (quoting Miller v. U.S. Dep't of Hous. & Urb. Dev., 2006 WL 2504834, at *5 (M.D.N.C. Aug. 29, 2006), aff'd, 216 F. App'x 367 (4th Cir. 2007)); see ECF No. 72.

Third, the court agrees with the Government that Plaintiffs cannot assert a Bivens claim against it because such claims "are not actionable against the United States, federal agencies, or public officials acting in their official capacities." McDaniels v. United

States, 2009 WL 212414, at *3 (D.S.C. Jan. 28, 2009) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)).

Accordingly, the court will deny Plaintiffs' motion for leave to amend because it would be futile for Plaintiffs to assert the claims in their proposed complaint. See Bilbro, 229 F. Supp. 3d at 404.

**C. Clarification of Damages Caps**

Next, the court addresses Plaintiffs' motion to clarify the applicability of certain damages caps to their claims.[4] ECF No. 302. They pose two questions for clarification:

> (1) Is [ ] Plaintiffs['] claim of medical battery involving healthcare fraud subjected to Texas'[s] $250,000 non-economic damages caps?
>
> (2) Is [ ] Plaintiffs['] recovery amount capped by the maximum amended Standard Form . . . amount of $5,000,000?

ECF No. 302 at 1. The court answers the first question in the affirmative but, on the second question, finds Plaintiffs' total recovery to be limited to $1,500,000. The court addresses each question in turn.

As an initial matter, the court notes that, having denied Plaintiffs' motion for leave to amend, that Plaintiffs have three claims pending before the court: (1) medical malpractice, (2) medical battery, and (3) loss of consortium. See Amend. Compl. The parties do not dispute that Texas law governs Plaintiffs' claims. See ECF Nos. 302 at 7, 305 at 5.

---

[4] The court considers the amended motion to clarify the applicability of damages caps to be the operative motion. See ECF Nos. 298, 302. For brevity, the court will not use the term "amended" when referring to the operative motion.

**1. Noneconomic Damages Cap under Texas Law**

Texas law limits the noneconomic damages a plaintiff can recover on a "health care liability claim":

> In an action on a health care liability claim where final judgment is rendered against a single health care institution, the limit of civil liability for noneconomic damages inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $250,000 for each claimant.

Tex. Civ. Prac. & Rem. Code § 74.301(b) (emphases added).

The court first addresses whether Plaintiffs' claims are "health care liability claims." The term "health care liability claim" is defined as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, . . . which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Id. § 74.001(a)(13). Plaintiffs' medical malpractice claim is a "health care liability claim" because Plaintiffs allege that it was "treatment, lack of treatment, or . . . [a] claimed departure from accepted standards of medical care, or health care[ ]" that "proximately result[ed] in injury" to Mr. Brown. See id.; Amend. Compl. ¶ 13. As for the medical battery claim, the Texas Supreme Court considers such claims to be "health care liability claims." See Murphy v. Russell, 167 S.W.3d 835, 837–39 (Tex. 2005). Because Plaintiffs' claims for medical malpractice and medical battery are health care liability claims, the court finds that both are subject to Section 74.301(b)'s cap on damages.

Next, the court addresses whether Plaintiffs are considered a single "claimant" for purposes of Section 74.301(b)'s noneconomic damages cap, thereby subjecting Mr. and

Mrs. Brown's total potential recovery of noneconomic damages to a single $250,000 damages cap. See Tex Civ. Prac. & Rem. Code § 74.301(b). A "claimant" is defined as "[a]ll persons claiming to have sustained damages as the result of the bodily injury or death of single person are considered a single claimant." Id. § 74.001(a)(2). Thus, Mr. Brown and Mrs. Brown must be considered a single claimant because Mrs. Brown only claims loss of consortium damages that arise from Mr. Brown's bodily injury. See id.; Amend. Compl. Loss of consortium damages, moreover, are considered noneconomic damages under Texas law, and so, Mrs. Brown's claim is subject to Section 74.301(b)'s noneconomic damages cap. See Tex. Civ. Prac. & Rem. Code §§ 41.001(12), 74.001(a)(20), 74.301(b).

Plaintiffs argue that certain criminal conduct is not subject to Section 74.301(b)'s damages cap. Assuming Plaintiffs allege criminal conduct, the court is unable to find any authority supporting this proposition. Relatedly, the court is not persuaded, as Plaintiffs suggest, that re-characterizing a medical battery claim as a "non-medical assault," prevents that claim from falling within the definition of a "health care liability claim." See id. § 74.001(a)(13); cf. Murphy, 167 S.W.3d at 838 (holding that "artful pleading" of a medical "battery based on lack of consent[ ]" will not prevent a claim from being considered a health care liability claim).

Likewise, Plaintiffs cannot recast their medical battery claim as a joint claim for "medical battery involving healthcare fraud" to avoid application of the noneconomic damages cap because the amended complaint does not contain a claim for healthcare fraud, and, as detailed above, Plaintiffs cannot assert one now. Moreover, the Texas Supreme Court has rejected similar attempts at "artful" reconstruction of a claim that

"arises from medical treatment" to escape the definition of a health care liability claim. Cf. Murphy, 167 S.W.3d at 838.

As such, the court answers the first question in the affirmative: Plaintiffs' claims, in the aggregate, are subject to the noneconomic damages cap of $250,000 in Section 74.301(b).

**2. Amount Sought in Administrative Claim**

The second question is whether Plaintiffs' total potential recovery is capped at $5,000,000. ECF No. 302 at 1. The Government argues that Plaintiffs' damages cannot exceed $1,500,000 because that is the amount sought in Plaintiffs' administrative claims presented to the United States Army Claims Service ("Army"). ECF No. 305 at 8.

Generally, 28 U.S.C. § 2675(b) precludes a plaintiff suing under the Federal Tort Claims Act ("FTCA") from seeking "any sum in excess of the amount of the claim presented to the federal agency . . . ." 28 U.S.C. § 2675(b). Plaintiffs first submitted their administrative claims to the Army on August 2, 2019, through two separate Standard Form-95 ("SF-95") forms, and Mr. and Mrs. Brown each sought $750,000 in their respective forms. ECF Nos. 75-3 at 1 (Mr. Brown's SF-95 form), 75-4 at 1 (Mrs. Brown's SF-95 form). Mr. and Mrs. Brown argue their total potential recovery is not limited to $1,500,000 because they each sought $2,500,000 in amended SF-95 forms. ECF No. 302 at 16.

In opposition, the Government submits the affidavit of Army Medical Claims investigator, James Jordan ("Jordan"), in which he represents that "[t]o date, the United States Army has not received any amended SF-95 forms directly from Plaintiffs." ECF No. 305-1 ¶ 8. Jordan further represents that, on April 13, 2021, the Army received a

seventy-two page request for reconsideration from Plaintiffs, challenging the Army's denial of their administrative claims. Id. ¶ 5. On page sixty-nine of that request, Plaintiffs stated, "we amended our original SF 95 Forms from $750,000 to $2,500,000 each." Id. According to Jordan, the reconsideration request was not signed by Plaintiffs. Id. ¶ 6. The Government notes that, under the pertinent regulation, amendments to administrative claims "shall be submitted in writing and signed by the claimant . . . ." 28 C.F.R. § 14.2(c); see ECF No. 305 at 9. Because Plaintiffs' reconsideration request was not signed, the Government argues that the request did not amend the amount Plaintiffs sought in their initially submitted SF-95 forms. ECF No. 305 at 9. And because the Army never received the amended SF-95 forms referenced in Plaintiffs' reconsideration request, the Government contends there is no basis to conclude that Plaintiffs amended the amount sought in their initially submitted SF-95 forms. See id. The court has reviewed Plaintiffs' reconsideration request in camera and has confirmed that it is not signed.

Plaintiffs argue that Jordan's affidavit is "false, misleading, and severely contradictory" and should be excluded "at this extremely late stage of litigation[.]" ECF No. 310 at 2. The only basis Plaintiffs set forth for questioning Jordan's affidavit is their blanket assertion that Jordan did not recognize inconsistencies in medical notes from Mr. Brown's surgery suggesting that Dr. Park may have been improperly substituted as the primary surgeon. See ECF No. 72 at 11. The court finds that this alleged failure does not

provide a basis to question the credibility of Jordan's affidavit, which concerns the processing of Plaintiffs' administrative claims.

Finding no basis to question the Army's assertion that it has never received amended SF-95 forms from Plaintiffs and having confirmed that Plaintiffs' reconsideration request was not signed, the court finds that the amount sought in Plaintiffs' administrative claims presented to the Army was $1,500,000 and that this amount was not amended at any time prior to Plaintiffs filing suit in this court.

Plaintiffs still argue that they are entitled to seek damages in excess of $1,500,000 under Section 2675(b)'s exception for newly discovered evidence. See ECF No. 302 at 16. The statute permits a claimant to seek an "increased amount" before the district court if "based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). Plaintiffs submit that they "discover[ed] relevant new evidence consisting of both the severely contradictory Nursing Intraoperative Note . . . and Operative Report[,]" again emphasizing that the notes are evidence of "healthcare fraud." ECF No. 302 at 16. The Government responds that Plaintiffs fail to "explain how that information was unavailable to them when they submitted their administrative claims in 2019." ECF No. 305 at 10. The court, likewise, is unable to discern from Plaintiffs' brief how the operating report and note would constitute newly discovered evidence, especially when Plaintiffs have been aware of the

operating report's and note's existence since at least February 10, 2023—the day the court issued an order discussing both documents. See ECF Nos. 72, 302.

Even assuming the note and report could constitute newly discovered evidence, the court would still find Section 2675(b)'s exception cannot be satisfied because the note and report, while probative of liability, do not "relate to the amount of the claims" in this suit. See 28 U.S.C. § 2675(b) (cleaned up). And while Plaintiffs claim the report and note are evidence of healthcare fraud, there is no claim for healthcare fraud before the court, and it would be futile for Plaintiffs to assert that claim now. Supra pp. 9–10. As such, the court concludes that Plaintiffs cannot recover more than $1,500,000 based upon the following findings: (1) Plaintiffs collectively sought $1,500,000 in their initially submitted SF-95 forms; (2) the Army did not receive their amended SF-95 forms; (3) they did not sign their reconsideration request that discussed an increased damages figure; and (4) they cannot avail themselves of Section 2675(b)'s newly discovered evidence exception.

**D. Motion for Sanctions and Motion for Summary Judgment**

The court will now address Plaintiffs' motion for sanctions, ECF No. 325, and motion for summary judgment, ECF No. 316. Plaintiffs argue sanctions are appropriate under both Rules 11 and 37(b)(2)(A). The court finds that the Government is not subject to sanctions under either rule.

Rule 11 requires that persons presenting pleadings, motions, or papers to the court, after conducting "an inquiry reasonable under the circumstances[,]" certify to the best of their knowledge, information, and belief that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Plaintiffs challenge the truthfulness of representations made in affidavits from the Government's witnesses that it has submitted to the court at various points throughout this litigation. See ECF No. 325. As noted by the Government, should this case not settle, Plaintiffs will have the opportunity to test the credibility of these witnesses at trial. ECF No. 327 at 9 (citing Davis v. Alaska, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.")). After reviewing Plaintiffs' motion for sanctions, the court finds that Plaintiffs have raised issues of witness credibility that are subject to continued dispute and go to the merits of this suit. See ECF Nos. 325, 328. Plaintiffs also charge opposing counsel with having acting "unethically and deceitfully" by submitting these allegedly "perjured" affidavits. ECF No. 325 at 14; see also id. at 23 ("AUSAs Bowens, Jordan, Hamlett, and Stroud have not provided this Court in over four years any evidence that rebuts or disproves the Department of the Army, USARCS, [or] OTJAG['s] June 15, 2021 damming and insurmountable investigative findings."). The court finds that these allegations of misconduct are unsupported or raise questions that can only be resolved at trial. As such, the court agrees with the Government; trial will afford Plaintiffs ample

opportunity to demonstrate any alleged falsehoods contained in affidavits submitted by the Government. Accordingly, the court finds that Rule 11 sanctions are not warranted.

Plaintiffs' summary judgment motion similarly seeks relief despite material facts being subject to a genuine, ongoing dispute. See ECF No. 316. Summary judgment is not appropriate where there is a "genuine dispute as to any material fact . . . ." See Fed. R. Civ. P. 56(a). The court will therefore deny the motion for summary judgment.[5]

Turning to Rule 37(b)(2)(A), it permits the court to impose an array of sanctions when a party "fails to obey an order to provide or permit discovery[.]" Fed. R. Civ. P. 37(b)(2)(A). The Government has not failed to obey any order issued by the court. As such, sanctions under Rule 37(b)(2)(A) are not appropriate.

**E. Motion to Reopen Discovery and to Compel Production of Documents**

Plaintiffs move to reopen discovery in order to compel the Government to produce the BAMC "Staff Judge Advocated [sic] Office General Full investigative reports and findings." ECF No. 330 at 1. Plaintiffs maintain that these documents were "improperly and unlawfully withheld during both the administrative tort claim process and original discovery period." Id.

Because an amendment to the scheduling order would be required to reopen discovery, Plaintiffs must show "good cause" under Rule 16(b)(4) to prevail on their

[5] To the extent that Plaintiffs seek reconsideration of prior orders of this court pursuant to Rule 60 of the Federal Rules of Civil Procedure, see ECF No. 316 at 9–10, the court denies that motion because final judgment has not been entered in this case, making relief pursuant to Rule 60 inappropriate at this time, see Fed. R. Civ. P. 60.

motion. See supra p. 6. Again, the primary consideration is Plaintiffs' diligence. See Montgomery, 182 F. App'x at 162.

Plaintiffs make this motion in response to the Government's submission of Jordan's affidavit in response to their motion to clarify the applicability of certain damages caps. ECF No. 330 at 10. Plaintiffs claim that the Government, by "blindsid[ing] Plaintiffs with a false, misleading, and perjured sworn affidavit from . . . Jordan over three years after the original discovery period" ended, "opened the door" for Plaintiffs to obtain the Army's investigative report and findings. Id. For one, as discussed above, the court finds no basis to question the credibility of Jordan's affidavit. See supra pp. 15–16. Second, Plaintiffs could have requested the Government provide the Army's investigative report and findings prior to the discovery deadline in the scheduling order, and Plaintiffs do not explain why they could not have requested this report before the close of discovery despite acting with diligence. See Eichin, 173 F.3d at 127 (affirming denial of motion to extend discovery deadline when movant failed to show "that the schedule could not be met despite the diligence of [the movant]."). The Government argues that Plaintiffs were far from diligent in obtaining discovery during the discovery period, as they served no written discovery, served no subpoenas, and took no depositions. ECF No. 327 at 4. The court agrees that these failures underscore Plaintiffs' lack of diligence and indicate that re-opening discovery is not appropriate at this late stage of the proceedings. As noted above, because Plaintiffs largely declined to participate in the discovery process when it was available to them, they cannot reopen discovery on their own terms without providing a good reason for doing so. As such, the court will deny the motion to reopen discovery because Plaintiffs have failed to show

good cause for their failure to comply with the discovery deadline set forth in the scheduling order. Without good cause to amend the scheduling order, the court need not reach the merits of Plaintiffs' motion to compel.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** the Government's motion for leave to identify a new expert, ECF No. 287. The court **GRANTS IN PART** Plaintiffs' motion to submit an economic damages disclosure but only to disclose damages for medical bills incurred in 2025 and 2026 and lost wages from 2025, ECF No. 297, and **DENIES IN PART** the same motion to the extent that Plaintiffs seek to disclose any additional damages, id. The court issues the requested clarification pertaining to damages caps in the manner set forth above, ECF No. 302. The court **DENIES** Plaintiffs' motion for leave to file an amended complaint, ECF No. 309, Plaintiffs' motion for summary judgment, ECF No. 316, Plaintiffs' motion for sanctions, ECF No. 325, and Plaintiffs' motion to reopen discovery and compel production of documents, ECF No. 330.

**AND IT IS SO ORDERED.**



**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 28, 2026**
**Charleston, South Carolina**